## S06A0773. CHENOWETH v. THE STATE.
(635 SE2d 730)

SEARS, Chief Justice.

The appellant, Junius Chenoweth, along with Ray Parker Junior and Donald Fort, were charged with various crimes, including murder, relating to the shooting death of Humberto Hernandez.[1]

---

[1] The crimes occurred on July 27, 2002. Chenoweth, Junior, and Fort were indicted on November 13, 2002, for various crimes. On January 29, 2004, a jury found Chenoweth not guilty of malice murder; guilty of two counts of felony murder, with armed robbery and aggravated assault as the underlying felonies; guilty of armed robbery; guilty of aggravated assault; guilty of the possession of a firearm during the commission of a felony; and guilty of the possession of a firearm by a first offender probationer. The trial court sentenced Chenoweth to life in prison for the felony murder conviction with armed robbery as the underlying felony. The court also sentenced Chenoweth to ten consecutive years in prison for the aggravated assault conviction;

Chenoweth and Junior were jointly tried for the offenses, but Fort testified against Chenoweth and Junior after he was given immunity that prohibited the use of his testimony against him at any trial for the offenses in question. Chenoweth was found not guilty of malice murder, but guilty of two counts of felony murder (with armed robbery and aggravated assault as the underlying felonies) and other offenses. The jury found Junior not guilty of all offenses. On appeal, Chenoweth contends, among other things, that the trial court erred in admitting into evidence his statements to the police. We find no merit either to this contention or to Chenoweth's other contentions, and therefore affirm his convictions.

1. About 1:30 a.m. on July 27, 2002, Humberto Hernandez was walking with his brother, Jose Hernandez, and a friend, Rudulfo Gutierrez, when they were assaulted in Gwinnett County. Jose Hernandez testified that he was hit and knocked to the ground; that Gutierrez was also hit and knocked down; and that Humberto Hernandez was shot. Jose also testified that his wallet was stolen, and that he did not see the attackers and has not been able to identify who attacked them. Gutierrez gave a similar description of the attack and similarly was unable to identify the attackers.

Donald Fort testified that he was not present when the crimes occurred, but that he knew Junior and Chenoweth and that Chenoweth told him that he shot Humberto Hernandez. Eddie Thomas, an acquaintance of Chenoweth, Junior, and Fort, testified that he lived close to where the crimes were committed, and that, between 1:30 a.m. and 2:30 a.m., on July 27, Chenoweth, Fort, and Junior came by his apartment. Thomas testified that Chenoweth told him that he (Chenoweth) had just robbed some people and shot one of them.

Moreover, about seven hours after Humberto was shot, Chenoweth was arrested in DeKalb County for theft by receiving a stolen vehicle. After a police officer stopped the car that Chenoweth was driving, Chenoweth fled on foot, but was eventually apprehended. The officer who arrested Chenoweth also recovered a gun that Chenoweth had discarded while running from the officer, and forensic tests showed that it was the murder weapon.

---

to five years of probation for the possession of a firearm during the commission of a felony, to run consecutively to the sentence on aggravated assault; and to five years to serve on the possession of a firearm by a first offender probationer. On January 30, 2004, Chenoweth filed a motion for new trial, and on July 7, 2005, Chenoweth filed an amended motion for new trial. On July 29, 2005, the trial court denied Chenoweth's motion for new trial, as amended, and on August 29, Chenoweth filed a notice of appeal. The appeal was docketed in this Court on January 5, 2006, and was submitted for decision on briefs.

Finally, in interviews with police on September 4 and September 9, 2002, Chenoweth admitted that the murder weapon belonged to him, that he stole $100 from the victims, and that he shot the murder victim.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that it is sufficient to support Chenoweth's convictions.[2]

2. After Chenoweth's arrest on theft by receiving a motor vehicle in DeKalb County, Chenoweth requested and received appointed counsel for that charge. A DeKalb County court held a preliminary hearing on the theft charge in August 2002. On September 4 and September 9, 2002, Gwinnett County police officers interviewed Chenoweth on the Gwinnett County murder charge, and did not contact the attorney who had been appointed on the DeKalb County theft charge before doing so. On appeal, Chenoweth contends that the failure to contact his counsel for the theft charge violated his right to counsel under Art. I, Sec. I, Par. XIV of the Georgia Constitution and rendered his statements to the police inadmissible. For the reasons that follow, we disagree.

In *Texas v. Cobb*,[3] the United States Supreme Court held that the Sixth Amendment right to counsel is "offense specific" and that, even if the right to counsel has attached to one offense for which the defendant has been charged, it does not attach to even a factually-related separate offense for which the defendant has not been charged.[4] The Court did, however, rule that, if an uncharged offense constitutes the same offense as a charged offense under the test established in *Blockburger v. United States*,[5] the uncharged offense will be considered the same offense as the charged offense for Sixth Amendment purposes.[6]

The four dissenters in *Cobb* took the position that the Sixth Amendment right to counsel should extend to any crime closely related to the crime with which a defendant has been charged even if the uncharged crime is not considered the same offense under the *Blockburger* test.[7]

Chenoweth contends that this Court should adopt the dissent's position in *Cobb* for purposes of the right to counsel under the Georgia Constitution. Moreover, he contends that the DeKalb County theft case was closely related to the Gwinnett County murder case because

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 532 U. S. 162 (121 SC 1335, 149 LE2d 321) (2001).

[4] Id. at 167-174.

[5] 284 U. S. 299 (52 SC 180, 76 LE 306) (1932).

[6] *Cobb*, 532 U. S. at 173-174.

[7] Id. at 177-188.

the murder weapon was discovered pursuant to the stop for the vehicle theft, and that the Gwinnett County officers thus violated his right to counsel by questioning him without first contacting his counsel on the theft charge.

We need not decide, however, whether to construe the right to counsel under the Georgia Constitution to be consistent with the majority or the dissenting opinions in *Cobb*, as, even under the dissenting opinion in *Cobb*, Chenoweth was not denied his right to counsel. As the dissent in *Cobb* noted:

> [C]ourts have found offenses "closely related" where they involved the same victim, set of acts, evidence, or motivation. See, e.g., *Taylor v. State*, [726 So2d 841, 845 (Fla. Ct. App. 1999)] (stolen property charges and burglary); *State v. Tucker*, [645 A2d 111, 121 (N.J. 1994)] (burglary, robbery, and murder of home's occupant); *In re Pack*, 420 Pa. Super. 347, 355-356, 616 A.2d 1006, 1010 (1992) (burglary, receiving stolen property, and theft charges), appeal denied, 535 Pa. 669, 634 A.2d 1117 (1993). They have found offenses unrelated where time, location, or factual circumstances significantly separated the one from the other. See, e.g., *Commonwealth v. Rainwater*, 425 Mass. 540, 547-549, 681 N.E.2d 1218, 1224, and n. 7 (1997) (vehicle theft charge and earlier vehicle thefts in same area), cert. denied, 522 U. S. 1095 (1998); *Whittlesey v. State*, 340 Md. 30, 56-57, 665 A.2d 223, 236 (1995) (murder and making false statements charges), cert. denied, 516 U. S. 1148 (1996); *People v. Dotson*, 214 Ill. App. 3d 637, 646, 574 N.E.2d 143, 149, 158 Ill. Dec. 349 (murder and weapons charges), appeal denied, 141 Ill. 2d 549, 580 N.E.2d 123 (1991).[8]

In the present case, Chenoweth's crime of theft by receiving a stolen vehicle involved different victims from the murder, occurred well after the murder, and occurred at a different location than the murder. Thus, even if we were to adopt the dissenters' position in *Cobb*, Chenoweth's crime of theft by receiving would not be considered closely related to the Gwinnett county murder charge and Chenoweth's right to counsel had not attached to the murder charge.

For the foregoing reasons, we conclude that the Gwinnett County officers' questioning of Chenoweth did not violate his right to counsel, and we thus find no merit to this enumeration of error.

---

[8] *Cobb*, 532 U. S. at 186-187.

3. Chenoweth contends that his trial counsel was ineffective for failing to object when the State allegedly presented the hearsay statements of a non-testifying co-defendant (Junior) to Fort and Thomas that inculpated him in the offenses. However, given the strength of the evidence against Chenoweth, including his statements to Thomas, Fort, and the police in which he admitting shooting the victim, and including the fact that the murder weapon was recovered from Chenoweth, we conclude that even if trial counsel had objected to the testimony at issue, there is not a reasonable probability that the outcome of the trial would have been different.[9] Chenoweth thus cannot prevail on this ineffectiveness claim.[10]

4. During trial, a juror reported that, during the presentation of videotapes, co-defendant Junior was facing the jury, and that two female jurors were uncomfortable with the fact that they were looking into his face when they looked up. This report was made before the close of evidence. Subsequently, the trial court, in the presence of the attorneys, asked each juror (1) whether there had been any conduct by any of the lawyers, the defendants, the court, the court staff, or the security staff which would cause the juror to be "unable to fairly and objectively evaluate the evidence in the case to determine whether the allegations against either or both of the defendants are true"; (2) whether the juror was aware of any discussions or deliberations by any of the jurors about any of the evidence in the case; and (3) whether the juror had any doubt about his or her ability to be impartial and to decide the case based solely on all of the evidence.

When the court questioned the jurors, two jurors (not the two female jurors who were reportedly uncomfortable) stated that there had been some deliberations or discussions about the evidence and two others (again, not the two female jurors in question) stated that they had developed a bias during the trial.

As for the two jurors who stated that there had been some deliberations or discussions about the evidence, the jurors stated that, when the case was finally given to the jury, they would be able to set aside any prior discussions and to decide the case based solely upon their objective view of all the evidence. Moreover, all of the jurors, including the two jurors who stated that they had developed

---

[9] See *Collier v. State*, 280 Ga. 148, 149 (625 SE2d 757) (2006) (To establish the prejudice prong of an ineffectiveness claim, a defendant must show that, but for counsel's deficient performance, "a reasonable probability exists that the trial would have had a different outcome.").

[10] See *Fortson v. State*, 280 Ga. 435, 436 (629 SE2d 798) (2006) ("In ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied.").

a bias, stated that they could decide the case impartially based upon all the evidence presented through the end of the trial.

(a) Chenoweth contends that the trial court erred in denying the motion for mistrial that he made based upon the jurors' statements that deliberations or discussions about the evidence had begun.[11] We disagree.

First, the two jurors who stated that there had been discussions about the evidence also stated that they could put aside those prior discussions and decide the case based upon all the evidence presented at trial. Moreover, those jurors stated that there had been no conduct by any of the lawyers, the court, or the defendants that would impact their ability to fairly decide the case, and that they had no doubt about their ability to be impartial. Because the jurors' answers to the trial court's questions show that the jurors' error in discussing the evidence was not so inherently prejudicial as to require a new trial,[12] we conclude that the trial court did not err in denying Chenoweth's motion for mistrial.

(b) Chenoweth also contends that a mistrial was warranted because two of the jurors expressed concerns about their ability to be impartial during the trial court's questioning. Chenoweth, however, failed to move for a mistrial on this ground and is thus barred from raising this issue on appeal.[13]

5. Chenoweth contends that trial counsel was ineffective for failing to object to the trial court's questions concerning juror bias. For the reasons that follow, we find no merit to this contention.

Chenoweth appears to contend that the trial court's general questions to each juror were improper, in that they did not neutrally attempt to ascertain the ability of the jurors to be fair. However, our review of the trial court's questions, which we have previously set forth in this opinion,[14] shows that the trial court's general questions

---

[11] After the trial court's questioning of the jurors, the trial court asked Chenoweth's attorney what motions he wanted to make. He did not move for a mistrial based on the alleged improper deliberations of the jurors, as did Junior's attorney. The trial court then concluded the hearing on the jurors and stopped the trial for a lunch recess. After lunch Chenoweth's attorney objected to the jurors' deliberations and stated that it authorized a mistrial for Chenoweth. Although Chenoweth's attorney's failure to raise this issue contemporaneously with the trial court's questioning of the jurors might make his motion for mistrial untimely, *Culler v. State*, 277 Ga. 717, 721 (594 SE2d 631) (2004), we pretermit this issue and address the merits of the motion.

[12] See *Sims v. State*, 266 Ga. 417, 419 (467 SE2d 574) (1996) (juror misconduct raises a presumption of prejudice, and the State has the burden to overcome the presumption; if the State shows that the misconduct was not so prejudicial that the verdict is inherently lacking in due process, then the verdict will not be overturned).

[13] *Culler*, 277 Ga. at 721.

[14] See page 11 of the opinion.

to each juror were not improper.[15] Accordingly, trial counsel was not ineffective for failing to object to the court's general questions.

Chenoweth also contends that the trial court's questions to one particular juror were improper. As Chenoweth is raising this contention in the context of his ineffectiveness of counsel claim, he must show that, even if his trial counsel should have objected to the court's question, there is a reasonable probability that, if trial counsel had done so, the outcome of the trial would have been different.[16] We conclude that Chenoweth has failed to carry this burden. In this regard, one possible harm to Chenoweth is that trial counsel's failure to object to the trial court's questions permitted a juror that was biased against him to remain on the jury. The record, however, does not establish that the juror in question was biased against Chenoweth. Another way for Chenoweth to establish prejudice would have been to show that, if trial counsel had objected to the trial court's question and the trial court had further questioned the juror, it would have become apparent that the juror in question was biased and should have been removed. Chenoweth, however, did not make this showing on motion for new trial,[17] and thus has failed to carry the prejudice prong of his ineffectiveness claim.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 2, 2006.

*Wystan B. Getz*, for appellant.

*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.

---

[15] See *Walker v. State*, 262 Ga. 694, 696 (424 SE2d 782) (1993) (trial court should make a "neutral attempt to determine the juror's impartiality").

[16] See *Collier v. State*, 280 Ga. at 149.

[17] See *Wyman v. State*, 278 Ga. 339, 340 (602 SE2d 619) (2004) (juror testified at hearing on motion for new trial regarding possible disqualification and impartiality); *Rickman v. State*, 277 Ga. 277, 281 (587 SE2d 596) (2003) (prospective juror testified at motion for new trial hearing regarding possible bias against the defendant).