Christopher JEWELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A04–1003–CR–187.

Court of Appeals of Indiana.

Dec. 30, 2010.

James H. Voyles, Jr., Jennifer M. Lukemeyer, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Christopher Jewell appeals his convictions and aggregate forty-year term for six counts of sexual misconduct and child molesting. Jewell was arrested and charged for another alleged offense not at issue here. He posted bond and secured counsel. While that charge was pending, law enforcement enlisted the victim in this case to call Jewell and elicit incriminating statements relating to his sexual misconduct. The calls were recorded. Jewell was charged thereafter with the instant sex offenses, and Jewell's recorded statements were introduced against him at trial. Jewell argues that the statements were procured and admitted in violation of his federal and state constitutional rights to counsel. We conclude that Jewell's statements were not obtained unconstitutionally. The right to counsel is offense-specific and attaches only after adversarial judicial proceedings have commenced. Although Jewell had been charged and had hired counsel in an unrelated case, he had not been charged with the present crimes when the subject phone calls took place. Accordingly, Jewell's right to counsel for this proceeding had not attached, and the investigatory phone calls were permissible. We also find that Jewell's aggregate sentence is not inappropriate in light of the nature of his offenses or his character. We affirm the judgment and sentence of the trial court.

### Facts and Procedural History

The evidence most favorable to the verdict reveals that Jewell engaged in sexual activity with his stepdaughter, T.S., on at least six occasions when T.S. was between the ages of thirteen and sixteen. The activity included fondling, oral sex, and sexual intercourse.

In August 2008, Jewell was arrested and charged with aiding or abetting the tattooing of a minor. Jewell allegedly helped T.S. get a tattoo. Detective Terry Judy of the Hendricks County Sheriff's Department initiated the filing. Jewell posted bond and retained counsel in connection with that case.

About one week later, T.S. revealed to her boyfriend and mother that Jewell sexually abused her. The disclosures were relayed to authorities. Detective Judy was assigned to investigate T.S.'s sexual misconduct allegations as well.

Detective Judy asked T.S. to participate in recorded phone calls to Jewell to elicit incriminating statements from him pertaining to his sexual misconduct. T.S. agreed. T.S. placed two phone calls to Jewell on August 19 and 20. During the phone calls, Detective Judy prompted T.S. with notes on what to say and what questions to ask. Jewell and T.S. discussed their relationship. Jewell made several references to their sexual involvement and instructed T.S. not to let anyone know about it. Excerpts from the conversations include:

> [JEWELL]: Everything is okay. There is one hundred percent, absolutely zero, zero way anybody could ever know anything unless you say something or I say something, period. I know that for a doubt. I know that without a doubt, period. I don't care what anybody says or what anybody tries to scare you into. It just needs to stay no.
>
> [T.S.]: And if you ever said anything to anybody ever, you would tell me?

[JEWELL]: [T.S.], I am 41 years old and would possibly go to prison the rest of my life. I would never say a thing to a living soul.

\* \* \* \* \* \*

[JEWELL]: Well, you ... you did ... yeah, I know you cried once like in the beginning and ... and sometimes you even took my hand and went ... took me upstairs and, you know, said, come on, and I just ... like I said, I got mixed feelings too. When you and I actually discussed things not long ago, I finally ... I ... guess just I understand that you just wanted me to be your dad and that's what I made a vow to do is just be your dad.

[T.S.]: (inaudible).

[JEWELL]: But I ... I was so close with you and I loved you. I was so close with you because we talked, we were friends, and that's what happens a lot of times when you get close with somebody. You know that with anybody. I didn't look at you at quote who you were legally, like you know, my step-daughter or anything. I looked at you as just somebody that was close, that I relied on, that I depended on, that helped me through life. And I don't know that that's what you ... I don't think that's what you understand of how I looked at you.

[T.S.]: (inaudible).

[JEWELL]: No, Honey. I'm asking. I ... want you to talk to me because I gotta know what to expect here. I mean, if you're tired of lying and you're gonna go tell your mom that, yeah, then I need to start preparing some things in my life, I guess. If you're gonna let me continue to try to be a father as you grow up and redeem myself in a proper way, I need to know that so I can quit being sick and having thoughts that I'm having and everything else and ... and start getting back to just caring about you and loving you the way that I'm supposed to.

State's Ex. 7.

The State charged Jewell with several offenses, namely two counts of Class B felony sexual misconduct with a minor, one count of Class C felony child molesting, one count of Class C felony sexual misconduct with a minor, and two counts of Class D felony child seduction.

Jewell's sex offense charges proceeded to trial. The tattooing charge ultimately was dismissed.

Before trial, Jewell moved to suppress the statements obtained from him during his recorded phone calls with T.S. Jewell argued that the statements were procured in violation of his federal and state constitutional rights to counsel. The trial court denied Jewell's motion following a suppression hearing.

A jury found Jewell guilty on all six counts.

The trial court sentenced Jewell to consecutive twenty-year terms for each Class B felony, eight years for each Class C felony to run concurrently to each other and all other counts, and three years for each Class D felony also to run concurrently to each other and all other counts, for an aggregate term of forty years. The trial court found in part:

Number one, the harm caused to the victim by the Defendant is significant. She's undergoing mental health counseling, is likely to continue to do so for many years. Number two, the Defendant was in a position of trust having the care, custody and control of the victim. He was the victim's stepfather. He was in a position of a surrogate

parent. The evidence revealed that the victim never knew her biological father and that she and her brother were adopted when she was three years old.... Shortly thereafter her adoptive parents were divorced and she lived with her adoptive mother.... After her adoptive mother married the Defendant when she was seven or eight years old the victim looked upon the defendant as her father and trusted him. The victim testified that the defendant, quote "took my virginity", end of quote. The Court finds that these were heinous violations of trust. Aggravator number three, the Defendant has a history of criminal activity. He has a conviction for Battery as a misdemeanor in 1998. Four counts of Child Molesting were dismissed pursuant to a plea agreement. Although this conviction was twelve years ago, it is significant that the victim was also a stepdaughter twelve years of age at the time of the conviction who had made allegations of sexual abuse by the Defendant beginning when she was seven years old until she was eleven years old. I'm going to find one mitigating circumstance that being that the imprisonment will cause a hardship on his family and he will not be able to pay child support for his youngest son who is seventeen years of age.... In addition the Court finds, number one, that each count was a separate episode of criminal conduct with increasing severity. What began as a touching or fondling developed into sexual intercourse and deviate sexual conduct with the victim on multiple occasions over a three year period which is an extended period of time. While only six counts were filed against the Defendant by the State in this case, the victim testified that the Defendant sexually assaulted her over thirty times and maybe as many as fifty times over the three year period. Number two, as stated

above the victim is undergoing psychological counseling and will continue to do so in the future. She suffers from nightmares, panic attacks and loss of sleep. The Defendant's criminal conduct has adversely affected the victim for the rest of her life. Number three, the victim also testified that the Defendant's sons were present in the home during some of the assaults. This shows ... the Defendant's complete lack of respect not only for the victim but for his own sons. Number four, the Defendant made a conscious choice to continue his sexual assaults on the victim even after promising her that he wouldn't do it again. Number five, the Defendant told the victim not to tell anyone because it would ruin his life. This shows that the Defendant cared only about himself and has no regard for the victim's wellbeing. Additionally the Defendant bought gifts for the victim and gave her money. He also took her to Planned Parenthood to get her birth control pills without her mother's knowledge and took the victim to get a tattoo where he signed the consent form as legal guardian without her mother's knowledge or consent. This reflects on the Defendant's bad character. Number six, the current six convictions as well as the 1998 Battery conviction were crimes against children and crimes against children are particularly contemptible....

Tr. p. 698–701.

Jewell now appeals.

### Discussion and Decision

Jewell raises two issues: (I) whether the trial court erred in admitting his recorded phone conversations with T.S. and (II) whether his aggregate sentence is inappropriate in light of the nature of his offenses and his character.

## I. Admission of Recorded Statements

▇ Jewell first argues that the trial court erred by admitting into evidence his recorded phone conversations with T.S. Jewell claims that his statements were procured and admitted in violation of his federal and state constitutional rights to counsel.

### A. Federal Constitutional Right to Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment right to counsel is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 339–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

▇ The Sixth Amendment right to counsel guarantees that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him. *Brewer v. Williams,* 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). An accused is denied the basic protections of the Sixth Amendment when there is used against him at his trial evidence of his own incriminating words, which government agents deliberately elicited from him after he had been indicted and in the absence of his counsel. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

▇ A person's Sixth and Fourteenth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated against him," "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

▇ The Sixth Amendment right to counsel is "offense specific." *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced. *Id.* Incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel. *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). But incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are admissible at a trial of those offenses. *Id.* at 180 n. 16, 106 S.Ct. 477. To exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. *Id.* at 180, 106 S.Ct. 477.

At least until 2001, lower courts interpreted *Brewer, Moulton,* and *McNeil* to allow an exception extending the Sixth Amendment right to counsel to uncharged offenses "inextricably intertwined" or "closely related" to already-pending charges. *See United States v. Covarrubias,* 179 F.3d 1219, 1223 (9th Cir.1999). Courts concluded that "[a]n exception to the offense-specific requirement of the Sixth Amendment occurs when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated from the

right to counsel for the uncharged offense." *Id.* (citing *United States v. Hines,* 963 F.2d 255, 257 (9th Cir.1992); *United States v. Cooper,* 949 F.2d 737, 743–44 (5th Cir.1991); *United States v. Melgar,* 139 F.3d 1005, 1013–15 (4th Cir.1998); *United States v. Doherty,* 126 F.3d 769, 776 (6th Cir.1997); *United States v. Arnold,* 106 F.3d 37, 42 (3d Cir.1997); *United States v. Kidd,* 12 F.3d 30, 33 (4th Cir.1993); *United States v. Carpenter,* 963 F.2d 736, 740 (5th Cir.1992); *United States v. Mitcheltree,* 940 F.2d 1329, 1342 (10th Cir.1991); *United States v. Nocella,* 849 F.2d 33, 37–38 (1st Cir.1988)). Determining whether the exception was applicable required "an examination and comparison of all of the facts and circumstances relating to the conduct involved, including the identity of the persons involved (including the victim, if any), and the timing, motive, and location of the crimes." *Id.* at 1225.

The United States Supreme Court has since clarified, however, that the Sixth Amendment right to counsel does not attach to uncharged crimes even when they factually relate to offenses for which formal proceedings have been initiated. *Texas v. Cobb,* 532 U.S. 162, 168, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). In order for the Sixth Amendment right to counsel to attach to a second, uncharged offense, that crime must qualify as the "same offense" as an already-pending charge under the test set forth for double jeopardy purposes in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Cobb,* 532 U.S. at 173, 121 S.Ct. 1335. The relevant inquiry is "whether each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). If each offense requires proof of at least one uncommon element, then the offenses are not the same and the right to counsel has not attached to the uncharged crime. *See id.* at 174, 121 S.Ct. 1335.

We conclude that Jewell's statements were not procured or admitted in violation of his Sixth Amendment right to counsel. Jewell was first arrested and charged with helping T.S. get a tattoo. He posted bond and retained counsel. Soon thereafter, Detective Judy enlisted T.S. to call Jewell on the phone and elicit incriminating statements about their sexual relationship. Jewell had not been charged for any sex offenses at the time the phone calls were placed. In line with the foregoing, we conclude that Jewell's right to counsel had not attached to the subject sex offenses at the time law enforcement procured his incriminating statements, as adversarial proceedings had not been initiated with respect to those offenses. Although Jewell had been charged with helping T.S. get a tattoo, aiding in the tattooing of a minor was clearly not the "same offense" as any of the subject sex crimes under the *Cobb/Blockburger* test. *Compare* Ind. Code § 35–42–2–7 (tattooing a minor) *with* Ind.Code §§ 35–42–4–9 (sexual misconduct with a minor), 35–42–4–3 (child molesting), and 35–42–4–7 (child seduction). Detective Judy's investigation thus did not run afoul of Jewell's federal constitutional rights, and Jewell's statements were not inadmissible on Sixth Amendment grounds.

### B. State Constitutional Right to Counsel

■ Article 1, Section 13 of the Indiana Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel[.]"

Section 13 in some cases affords broader protections than the Sixth Amendment, *Edwards v. State,* 902 N.E.2d 821, 828 (Ind.2009), and the Section 13 right to counsel has been held available, depending on the circumstances, prior to the filing of

formal charges against the accused. *Ajabu v. State,* 693 N.E.2d 921, 928 n. 4 (Ind.1998); *see Malinski v. State,* 794 N.E.2d 1071, 1079 (Ind.2003) (Section 13 guarantees the right to be notified that hired counsel is present at police station and wishes to consult with the accused); *Pirtle v. State,* 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975) (person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent); *Suter v. State,* 227 Ind. 648, 658, 88 N.E.2d 386, 390 (1949) (right to counsel attaches following arrest where accused requests attorney).

However, we are aware of no Indiana precedent indicating that the Section 13 right is non-offense-specific and attaches to uncharged offenses simply by way of other pending charges or the accrual of Section 13 rights in other pending investigations. *See Hall v. State,* 870 N.E.2d 449, 460–61 (Ind.Ct.App.2007), *trans. denied.*

Even if Indiana recognized its own "inextricably intertwined" or "closely related" doctrine similar to that formulated by courts pre-*Cobb,* we would still find an insufficient showing of a factual relationship between Jewell's alleged tattooing offense and his present sex offenses so as to sustain a conclusion that Jewell's right to counsel attached to the latter crimes before they were charged. Both the alleged tattooing incident and the subject sex offenses supposedly involved the same actors—perpetrator Jewell and victim T.S.—but the location, timing, motives, and overall nature of the offenses all were undoubtedly different.

For these reasons, we identify no basis to conclude that Jewell's state constitutional right to counsel had attached to the instant sex offenses when T.S. elicited Jewell's incriminating statements. We thus find that the procurement and admission of Jewell's statements did not offend his Section 13 rights.

## II. Inappropriateness of Sentence

■ Jewell next argues that his aggregate forty-year term is inappropriate in light of the nature of his offenses and his character.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State,* 876 N.E.2d 1114, 1116 (Ind.2007) (citing *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind.2007)). The defendant has the burden of persuading us that his or her sentence is inappropriate. *Id.* (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006)).

As for the nature of the offenses, Jewell suggests that his crimes were born from a legitimate relationship between himself and his victim. We find this suggestion misguided and, at any rate, unavailing. Jewell took advantage of his underage stepdaughter repeatedly over the course of several years. He exploited a position of trust, committed offenses of increasing severity on at least six occasions, and instructed his victim not to disclose the sexual abuse to anyone. We believe the nature of Jewell's crimes more than justifies the enhanced, consecutive sentences imposed.

With regard to his character, Jewell emphasizes his minimal criminal record, his-

tory of steady employment, support from family, and expression of remorse. Jewell's criminal record is sparse, but we note that his prior battery conviction evidently involved yet another stepdaughter. In any event, even if we resolved all of the proposed factors in Jewell's favor, we could not say they warrant a downward sentence revision.

For the foregoing reasons, we do not find Jewell's aggregate forty-year term inappropriate.

Affirmed.

BAKER, C.J., and BARNES, J., concur.