ATTORNEYS FOR APPELLANT
James H. Voyles, Jr.
Jennifer M. Lukemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana



FILED
Nov 30 2011, 11:08 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 32S04-1104-CR-200

CHRISTOPHER JEWELL,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hendricks Superior Court, No. 32D02-0808-FB-11
The Honorable David H. Coleman, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 32A04-1003-CR-00187

**November 30, 2011**

**Shepard, Chief Justice.**

When a defendant is represented by a lawyer for a particular offense, do the police violate his right to counsel if they approach him about a different offense? Under the Sixth Amendment, the answer is no. We hold that under the broader protections of Article 1, Section 13, of the Indiana Constitution, the right to counsel is violated only where the different offense is inextricably intertwined with the charge on which counsel is already representing the defendant. Nevertheless, we affirm the judgment of the trial court.

**Facts and Procedural History**

In August 2008, Christopher Jewell was arrested and charged with tattooing a minor, a class A misdemeanor, for allegedly taking his former stepdaughter T.S. to get a tattoo.[1] Detective Terry Judy investigated the case for the Hendricks County Sheriff's Department. Released on bond, Jewell retained counsel for the charge.

Shortly thereafter, but while the tattooing charge was still pending, T.S. got into an argument with her boyfriend. During the course of the argument, she revealed that Jewell forced a sexual relationship upon her while Jewell and her mother were married. T.S.'s mother contacted the police and Detective Judy also began to investigate the alleged sex crimes. The sexual relationship appeared to last from March 25, 2004, through June 30, 2007. T.S. was between thirteen and sixteen years of age during this period.

Detective Judy arranged for T.S. to make recorded phone calls to Jewell in order to obtain evidence concerning sexual misconduct. T.S. made two such calls in late August 2008. Detective Judy was present and listening in during the calls and prompted T.S. with notes on things to say and questions to ask. During the course of the conversations, Jewell mentioned the pending misdemeanor charge and that he had obtained an attorney for that charge, but also made several potentially incriminating statements about sexual misconduct. (Tr. at 37–38, 40–46, 49–57, 65–66; State's Ex. 7, 10.) At no point during the phone conversations did T.S. indicate that she was working with, or in the presence of, the police.

---

[1] Ind. Code § 35-42-2-7(c) (2008). T.S. was under the age of eighteen, and at that time her mother and Jewell had divorced. (Tr. at 67; App. at 21, 222.)

The State then charged Jewell with three counts of sexual misconduct with a minor, two as class B felonies and one as a class C felony,[2] one count of felony child molesting, a class C felony,[3] and two counts of child seduction, a class D felony.[4] It eventually dismissed the tattooing charge.

Jewell moved to suppress the incriminating statements from the recorded conversations, claiming they were obtained in violation of his right to counsel under the Sixth Amendment and Article 1, Section 13, of the Indiana Constitution. Following a hearing, the trial court denied the motion. The court admitted the evidence at trial over Jewell's renewed objection.

A jury found Jewell guilty of all six counts, and the trial court sentenced him to a total of forty years: consecutive twenty-year terms for the class B felonies with concurrent eight-year terms for each class C felony and concurrent three-year terms for each class D felony. Jewell appealed.

The Court of Appeals affirmed. Jewell v. State, 938 N.E.2d 1283 (Ind. Ct. App. 2010). It noted that the Sixth Amendment's protection is specific to the offense on which counsel represents a defendant, citing Texas v. Cobb, 532 U.S. 162 (2001). It found no precedent for any broader protection of the attorney-client relationship under Article 1, Section 13, of our constitution. Id. at 1290.

---

[2] Ind. Code § 35-42-4-9(a), (b) (2008).

[3] Ind. Code § 35-42-4-3(b) (2008).

[4] Ind. Code § 35-42-4-7(h) (2008 & Supp. 2010).

We granted transfer, thereby vacating the opinion of the Court of Appeals, to consider whether an "inextricably intertwined" exception exists under Article 1, Section 13. Jewell v. State, 950 N.E.2d 1205 (Ind. 2011) (table).

## I. Origin and Application of the "Inextricably Intertwined" Exception

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The purpose of this guarantee is "to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." McNeil v. Wisconsin, 501 U.S. 171, 177–78 (1991) (emphasis in original) (quoting United States v. Gouveia, 467 U.S. 180, 189 (1984)). As such, its protections are "offense specific," do not attach until formal commencement of adversarial proceedings, and "cannot be invoked once for all future prosecutions." Id. at 175.

While the Sixth Amendment's right to counsel is broadly viewed as "offense specific," most federal circuits traditionally recognized two exceptions. These were the "inextricably intertwined" (or "closely related") exception and the "circumvention of Sixth Amendment right" exception, both inferred from the holdings of the U.S. Supreme Court in Brewer v. Williams[5]

---

[5] 430 U.S. 387 (1977). Brewer held a defendant's waiver of his Sixth Amendment right to counsel invalid when the defendant, after being arraigned on child abduction charges, provided statements to police officers regarding the whereabouts of the child's body, leading to a subsequent indictment for murder and use of the statements at trial. Id. at 390–94, 404–06. Without explicitly saying as much, the Court treated the defendant's right to counsel—which had formally attached only with regard to the kidnapping charge—as applying with equal force to murder charges that involved the same incident, alleged perpetrator, and victim. See id. at 404–06.

and <u>Maine v. Moulton</u>.[6]  <u>See, e.g.</u>, <u>United States v. Covarrubias</u>, 179 F.3d 1219, 1223 (9th Cir. 1999), <u>abrogated by</u> <u>Cobb</u>, 532 U.S. at 168 n.1.  The "circumvention of the Sixth Amendment right" exception applies when the government or state breaches its "'affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.'"  <u>Id.</u> at 1223 n.6 (quoting <u>Moulton</u>, 474 U.S. at 171).  <u>See also</u> <u>Moulton</u>, 474 U.S. at 176 ("Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.").  The crux of this exception is the knowing use of state agents to obtain incriminating statements relevant to pending charges for which a defendant has already obtained counsel.  It does not apply to statements obtained by "luck or happenstance."  <u>See</u> <u>Moulton</u>, 474 U.S. at 176.

A. Federal Appellate Courts.  The Ninth Circuit provided probably the best articulation and application of the "inextricably intertwined" exception.  <u>Covarrubias</u>, 179 F.3d at 1223–26.  In <u>Covarrubias</u>, the defendants allegedly drove eight individuals—some of whom were believed to be illegal immigrants—from California to Washington.  After dropping off seven of the individuals at various locations around Washington, the defendants got in a dispute with the eighth over the amount of payment and refused to let him leave the van.  Local police arrested the defendants on charges of kidnapping, and the court appointed counsel at a subsequent arraignment.  <u>Id.</u> at 1222.

---

[6] 474 U.S. 159 (1985).  Moulton was indicted on theft charges for receiving stolen automobile parts.  <u>Id.</u> at 162.  The police subsequently enlisted a co-defendant to obtain statements implicating the defendant in acts of burglary to obtain the stolen automobile parts and an alleged plan to kill a potential witness.  <u>Id.</u> at 162–63.  The prosecution obtained a new indictment to include the burglary charges.  <u>Id.</u> at 167.  The <u>Moulton</u> Court rejected the State's argument that it was simply investigating additional crimes and held the incriminating statements inadmissible—at least in a trial for the theft and burglary charges.  <u>Id.</u> at 180.  It appeared, however, that the Court left the door open with regard to using the statements at a future trial for threatening to kill the witness.  <u>See</u> <u>id.</u> at 180 n.16.

Following their arraignment, a federal agent from Immigration and Naturalization Services (INS) visited the defendants in the local jail and interrogated them about both the state kidnapping charge and a potential federal charge for transporting illegal aliens.[7] Id. Though the agent provided Miranda warnings—waived by the defendants—the agent made no attempt to contact the defendants' appointed counsel. Id. at 1222 n.4. A few months later the state charges were dropped, and the defendants were immediately indicted on federal charges of moving an illegal alien and forfeiture. The federal district court suppressed the statements made to the INS agent, finding support for both exceptions to the offense-specific rule of the Sixth Amendment right to counsel. The Ninth Circuit affirmed, applying only the "inextricably intertwined" exception. Id. at 1222–26.

It noted that the exception has been applied "'when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense.'" Id. at 1223 (quoting United States v. Hines, 963 F.2d 255, 257 (9th Cir. 1992)). "[T]he inquiry focuses on the nature of the conduct involved rather than on the elements of the offense itself." Id. at 1225. Application of the exception requires examining and comparing "all of the facts and circumstances" related to the conduct, "including the identity of the persons involved (including the victim, if any), and the timing, motive, and location of the crimes." Id. None of those factors is viewed as particularly dispositive, nor do all factors need to tip in favor of the exception for the offenses to be "inextricably intertwined." Id. However, "[t]he greater the commonality of the factors and the more directly linked the conduct involved, the more likely it is that courts will find the exception to be applicable." Id.

The Covarrubias court then examined those factors and found the state crime of kidnapping and the federal crime of transporting illegal aliens to be "inextricably intertwined."

---

[7] This agent had been involved in the arrest of the defendants and the district court found the agent was aware that the defendants had counsel for the state charge. Covarrubias, 179 F.3d at 1222 n.3.

Id. at 1225–26. The timing of the two crimes overlapped and involved "a continuous course of conduct," and the identity of the individuals overlapped as well—the defendants were perpetrators in both crimes and the kidnapped victim of the state crime was the transported illegal alien in the federal crime. Id. Furthermore, the court found that the situs for both crimes overlapped, to some degree, in Washington; the defendants had an identical motive for both crimes; and both crimes arose from the same set of facts. Id. The court also pointed out that, as a practical matter, the degree of relation between the crimes was easily apparent from the overlap in interrogations between the state and federal officers; "it would have been difficult to confine one's questioning to the facts and circumstances of one offense without straying into a discussion of the other." Id. at 1226 n.8.

Other circuits used a similar analytical framework. For example, in United States v. Arnold, the Third Circuit applied the "closely related" exception where both charged offenses "(1) involve the same witness; (2) arise from the same facts and circumstances; (3) are closely related in time"; and (4) involve related conduct. 106 F.3d 37, 42 (3d Cir. 1997), abrogated by Cobb, 532 U.S. at 168 n.1. Specifically, the original charge "involved precisely the same type of underlying conduct" as the superseding indictment. Id. Because the charges "were closely related offenses and arose from the same predicate facts, conduct, intent and circumstances," the court held that the defendant's Sixth Amendment right to counsel carried over from the indictment of the first charge to the investigation of the second. Id.

Still other cases provide examples in which the "inextricably intertwined" exception was considered but not satisfied under particular facts. See United States v. Kidd, 12 F.3d 30, 33 (4th Cir. 1993) (subsequent charge—although for the same offense—"involved a different purchaser-informant, occurred at a different time, and took place in a different location"—it was "factually

7

distinct from, and independent of," the prior charges);[8] <u>United States v. Carpenter</u>, 963 F.2d 736, 740–41 (5th Cir. 1992) (federal firearm offense and state burglary offense were not "inextricably intertwined"—the only connection between the two crimes was that defendant possessed the firearm at the time he was arrested for the burglary); <u>United States v. Cooper</u>, 949 F.2d 737, 743–44 (5th Cir. 1991) (federal and state crimes concerned different conduct, even though both prosecutions could use much of the same evidence).[9]

B.  Texas v. Cobb.  As Jewell acknowledges, in <u>Texas v. Cobb</u> the U.S. Supreme Court rejected the "inextricably intertwined" exception to the offense-specific nature of the Sixth Amendment in favor of a framework based upon the <u>Blockburger</u> test for double jeopardy.  532 U.S. at 168, 173.  While this forecloses the federal constitutional matter here,[10] the rationale behind the decision bears on our analysis of whether the exception exists under Article 1, Section 13, of the Indiana Constitution.

In <u>Cobb</u>, the defendant's neighbor's home was burglarized and the neighbor's wife and daughter were reported missing.  <u>Id.</u> at 164–65.  An anonymous tip led police to believe the defendant was involved in the burglary; after questioning, he confessed to the burglary but

---

[8] The defendant was indicted and charged with various drug-related offenses and was appointed counsel. <u>Kidd</u>, 12 F.3d at 31.  Subsequently released on his own recognizance, he tested positive for cocaine under bond-mandated drug tests.  The government enlisted the aid of a new undercover informant to purchase cocaine from the defendant and then obtained a superseding indictment that included the new charges.  <u>Id.</u> at 31–32.  The <u>Kidd</u> court was particularly concerned with the sanctuary provided by a broad reading of the exception, noting that such a reading would "hamper authorities" and "essentially permit charged suspects to commit similar crimes with impunity."  <u>Id.</u> at 33.

[9] The defendant was originally arrested on a state charge of aggravated robbery.  <u>Cooper</u>, 949 F.2d at 740. During the pre-arrest investigation, a search of the defendant's car revealed a sawed-off shotgun.  <u>Id.</u> Post-arrest, a federal agent visited the now-represented defendant in the state jail to question him about potential federal weapons charges stemming from the shotgun—but the federal charges had nothing to do with the robbery.  <u>Id.</u>

[10] The <u>Blockburger</u> test requires examination of whether each statutory offense "requires proof of a fact which the other does not."  <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).

denied any knowledge about the missing individuals.  Id. at 165.  The defendant was arrested and charged with burglary and appointed counsel in due course.  Believing the defendant was involved in the disappearances, the police contacted his attorney and asked to interview the defendant.  The attorney agreed—this process repeated itself several times.  Id.

Released on bond for the burglary, the defendant moved in with his father.  A short time later, the father contacted the police to report that the defendant had confessed to murdering the missing woman and daughter.  The police arrested the defendant for murder and administered Miranda warnings; the defendant waived his Miranda rights and confessed to killing the mother and daughter during the burglary.  Id.  He was subsequently found guilty of murder and sentenced to death.  The Court of Criminal Appeals of Texas reversed, on grounds there had been a violation of the defendant's Sixth Amendment right to counsel with respect to the murder charge.  Id. at 166–67.  The Texas court applied its version of the "inextricably intertwined" exception and found that the defendant's assertion of the right to counsel in the burglary case carried over to the murder investigation and charge.  Id. at 167.

The Cobb Court reversed, holding that "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockburger test."  Id. at 173.  It acknowledged the trend in the federal circuits (and some state courts) to apply some variation of the "inextricably intertwined" exception, but explicitly rejected it.  Id. at 168.

Instead, the Court focused on two "critical considerations":  the importance of Miranda warnings before the police conduct any custodial interrogations and "society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses."  Id. at 171–72.  Additionally, the Court believed the "inextricably intertwined" exception was flawed in that it would "presuppose that officers will possess complete knowledge of the circumstances surrounding an incident, such that the officers will be able to tailor their investigation to avoid addressing factually related offenses."  Id. at 173.  The reality, the Court said, is that determining the factual circumstances surrounding an alleged crime is the very

9

purpose for the police investigation in the first place, and the possibility of violating the Sixth Amendment under a more nebulous "inextricably intertwined" exception might deter legitimate investigation altogether.  Id. at 173–74.

Justice Breyer, however, challenged the majority's presumption about the clarity of the Blockburger test, saying that it has been described as "'a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator.'"  Id. at 185 (Breyer, J., dissenting) (quoting Albernaz v. United States, 450 U.S. 333, 343 (1981)).  If it is challenging to trained legal professionals, Justice Breyer opined, it will likely be more so for officers in the field.  Id. at 185–86.  The "inextricably intertwined" exception—while less a bright line and still imperfect— is more reasonable to apply by defining "offense" based upon the conduct constituting the crime and closely related criminal acts.  Id. at 186.  Furthermore, despite its nebulous nature, the federal circuits had no trouble applying—or refusing to apply—the exception.  Id.

C.  The "Inextricably Intertwined" Exception in State Courts.  A survey of cases from other states reveals that several have used the "inextricably intertwined" exception.  See, e.g., Taylor v. State, 726 So. 2d 841 (Fla. Ct. App. 1999); People v. Clankie, 530 N.E.2d 448 (Ill. 1988); Whittlesey v. State, 665 A.2d 223 (Md. 1995); Commonwealth v. Rainwater, 681 N.E.2d 1218 (Mass. 1997), abrogated by Cobb, 532 U.S. at 168 n.1; State v. Tucker, 645 A.2d 111 (N.J. 1994); In re Pack, 616 A.2d 1006 (Pa. 1992), abrogated by Cobb, 532 U.S. at 168 n.1.  But almost all these cases rely on the Sixth Amendment, not the state constitutions, and all of the Sixth Amendment cases pre-date Cobb.

An exception is Chenoweth v. State, which both post-dates Cobb and examined the right to counsel and the "inextricably intertwined" concept under the Georgia constitution.  635 S.E.2d 730 (Ga. 2006).  The Chenoweth court declined to decide, however, whether the majority or

10

minority holding of Cobb best expressed the right to counsel under the Georgia constitution because it found the defendant's right was not violated under either standard.[11] Id. at 733–34.

Oregon appears to recognize some version of the "inextricably intertwined" exception under its constitution, but not in those express terms. See State v. Sparklin, 672 P.2d 1182, 1187 (Or. 1983) (under Oregon's right-to-counsel provision "there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. . . . The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes" (emphasis added));[12] cf. State v. Hill, 921 P.2d 969, 972 (Or. Ct. App. 1996) (Sparklin means that "a defendant cannot be interrogated on matters that are 'factually related' to the charges on which he or she is represented unless defense counsel is notified of the interrogation and given a reasonable opportunity to attend"). Many of the state law cases cited by the Sparklin court—in which state courts applied a "factually related/factually unrelated" distinction—pre-date the U.S. Supreme Court's first articulation of the "offense specific" nature of the Sixth Amendment in McNeil. Still, the principle remains valid under Oregon law. See, e.g., State v. Gilmore, 256 P.3d 95 (Or. 2011).

---

[11] The defendant in Chenoweth was arrested for theft by receiving a stolen car. Chenoweth, 635 S.E.2d at 732. The defendant fled the arresting officer and, in the process, dropped a handgun. Id. He was charged and appointed counsel for receiving stolen goods, and then forensic tests linked the handgun to a murder that had occurred a few hours before his arrest. Id. Officers questioned the defendant—without contacting his attorney—about the murder and the defendant confessed his involvement. Id. at 733. The court found that the theft charge "involved different victims from the murder, occurred well after the murder, and occurred at a different location than the murder." Id. at 734.

[12] Like our Section 13, Article I, Section 11, of the Oregon Constitution provides, "In all criminal prosecutions, the accused shall have the right . . . to be heard by himself and counsel . . . ." Many of Oregon's constitutional provisions find their roots in our 1851 constitution. See, e.g., State v. Davis, 256 P.3d 1075, 1079 (Or. 2011) (Oregon's constitutional right against self-incrimination identical to, and presumed to be based upon, Article 1, Section 14 of the Indiana Constitution); State v. Wheeler, 175 P.3d 438, 441 (Or. 2007) (constitutional requirement that a punishment be proportional to the crime taken from Indiana Constitution); State v. Delgado, 692 P.2d 610, 612 n.5 (Or. 1984) (Oregon's right to bear arms taken verbatim from Sections 32 and 33 of Indiana Constitution).

## II. Indiana's Right to Counsel Under Article 1, Section 13

A.  The Scope of Indiana's Right to Counsel.  The right to counsel protections afforded through Article 1, Section 13, of our Constitution are sometimes broader than those flowing from the Sixth Amendment—particularly in the context of invocation of the right and when the right attaches.  See Malinski v. State, 794 N.E.2d 1071, 1079 (Ind. 2003) ("In light of Indiana's history of an expansive state right to counsel . . . an incarcerated suspect has a right under section 13 to be informed that an attorney hired by his family to represent him is present at the station and wishes to speak to him."); Suter v. State, 227 Ind. 648, 658, 88 N.E.2d 386, 390 (Ind. 1949) (right to counsel violated when defendant requested counsel during interrogation, specified the particular attorney, and the police refused his request and refused to permit the attorney to see him); Batchelor v. State, 189 Ind. 69, 76–77, 125 N.E. 773, 776 (Ind. 1920) ("It has been held that a constitutional right to be heard by counsel is not limited to the right to be heard by counsel at the trial, but the spirit of the provision contemplates the right of accused to consult with counsel at every stage of the proceedings.").

In Hall v. State, the Court of Appeals considered whether a defendant who requested counsel on one offense was entitled to counsel on other offenses.  870 N.E.2d 449 (Ind. Ct. App. 2007).  The police had arrested a juvenile based upon a tip that he was involved in a robbery-homicide.  Id. at 454.  His parents were brought to the detention facility and provided a list of the defendant's rights.  The juvenile and his parents spent twenty-five minutes discussing whether he wanted to give a statement.  Thereafter, the juvenile and his mother signed a waiver of rights and the juvenile confessed.  Id.  Based partially on this confession, the juvenile was charged—as an adult—and found guilty of multiple counts of burglary, murder, robbery, and other offenses.  On appeal, he argued that his statement to police violated his right to counsel under Section 13 because he had requested counsel at a prior court hearing and his statement to the police was provided outside that counsel's presence.  Id. at 460–61.  The prior hearing was more than a month before his arrest for robbery-homicide and involved a violation of a suspended commitment (juvenile probation).  Id.  The court found no violation of his right to counsel.  Id. at 461.

The Court of Appeals acknowledged that the Indiana Constitution provides a more protective right to counsel than the Sixth Amendment, specifically in that Indiana's constitutional right—contrary to the Sixth Amendment—can attach "prior to the filing of formal charges against the defendant," but both provisions "guarantee the right to counsel at any critical stage of prosecution where counsel's absence 'might derogate from the accused's right to a fair trial.'" Id. at 460 (quoting Koehler v. State, 499 N.E.2d 196, 198 (Ind. 1986)). But the Hall court appears to have treated Indiana's right to counsel as "offense specific," just like the federal right. See id. at 461. "The police have an interest in investigating new or additional crimes after an individual is formally charged with one crime." Id. "'To find that the defendant invoked his . . . right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request.'" Id. (quoting McNeil, 501 U.S. at 178).

With this foundation of case law in mind, we proceed finally to the jurisprudential issue at hand: does the "inextricably intertwined" exception have a place within Indiana's constitutional protections?

B. The "Inextricably Intertwined" Exception Under Section 13. We agree with the U.S. Supreme Court in Cobb that a primary concern in assessing the scope of the constitutional right to counsel protections is "society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." Cobb, 532 U.S. at 171–72. Furthermore, proper Miranda warnings can alleviate many concerns in the context of custodial interrogations. Compare id. at 171, with Malinski, 794 N.E.2d at 1076–80. However, Miranda protections will not arise—much less be sufficient—where, as here, there is no custodial interrogation involved and the defendant is wholly unaware that he is being questioned by a de facto agent of the state. And more importantly, the state's interest in protecting society by investigating potential criminal activities must be balanced with the defendant's right to aid of counsel before facing the full power of the prosecutorial state.

13

Furthermore, Justice Breyer's observations in Cobb seem well taken. See Cobb, 532 U.S. at 183 (Breyer, J., dissenting). The Blockburger test—and the correlative test for double jeopardy developed under our cases applying Article 1, Section 14, of the Indiana Constitution— is deliberately narrow in scope. The test seeks to determine whether a single act or criminal transaction constitutes a violation of two or more separate and distinct statutory crimes. See Richardson v. State, 717 N.E.2d 32, 49 & 50 n.41 (Ind. 1999). That determination is not at issue here. Here, the question is whether two or more acts or criminal transactions are so closely related that the right to counsel for one offense must necessarily apply to the other. Covarrubias, 179 F.3d at 1223. Simply put, we conclude that the Blockburger test is a little out of place on questions like the one before us.

In light of our traditional view that Article 1, Section 13 provides broader protection than the Sixth Amendment, we believe the "inextricably intertwined" exception is appropriate under our Constitution. It properly reflects the balance we seek to maintain between society's legitimate law enforcement needs and a defendant's right to counsel.

The "inextricably intertwined" exception to the general rule that Section 13's right to counsel protection is offense specific applies when it was objectively foreseeable that the pending offense, for which the right to counsel has already attached, was so inextricably intertwined with the offense under investigation that the right to counsel for the pending offense could not be constitutionally isolated from the right to counsel for the offense under investigation.[13] The inquiry focuses on the nature of the conduct involved rather than on the elements of the offenses. A reviewing court must examine and compare all the facts and circumstances—as known at the time of the investigation—related to the conduct, including the

---

[13] However, the right to counsel must still attach to at least one of the offenses. The exception does not change Indiana law regarding when the right attaches—it only addresses the breadth of that attachment with regard to other potential offenses.

nature of the conduct, the identity of the persons involved (including the victim, if any), and the timing, motive, and location of the crimes.[14]

None of those factors is particularly dispositive, nor do all factors need to tip in favor of the exception for it to apply. However, the greater the commonality of the factors and the more directly linked the conduct involved, the more likely it is that the two offenses are "inextricably intertwined."

C. Applying the Test Here. We conclude that Jewell's sexual misconduct was not—based on the facts and circumstances known to Detective Judy at the time of the phone calls—so closely related to the offense of tattooing a minor as to be inextricably intertwined. The respective offenses were not linked temporally or geographically, nor by any common motive in the record. It is true that the primary parties—Jewell, T.S., and Detective Judy—were the same. However, that does not end the inquiry.

The sexual misconduct occurred over a period of years, from 2004 to 2007, at both T.S.'s and Jewell's homes, whereas the tattooing was a single incident at a single location—an otherwise-unrelated tattoo parlor—and took place almost a year after the sexual relationship ended. In fact, aside from the identity of the parties, the nuclei of operative facts for the two offenses are wholly and logically distinct. Not only would it be possible for Detective Judy to confine his questioning to the facts and circumstances of one offense without straying into a discussion of the other, that is exactly what occurred. Cf. Covarrubias, 179 F.3d at 1226 n.8.

---

[14] The Cobb Court worried that post-hoc analysis of a police officer's investigation—in light of all subsequently discovered information—may deter police from conducting legitimate investigations of additional crimes. See Cobb, 532 U.S. at 171–72. Conducting the inquiry using an "objectively foreseeable" standard, and in light of the facts and circumstances known (or reasonably knowable) at the time of the investigation, mitigates this concern.

Furthermore, while one might now hypothesize that Jewell's conduct facilitating T.S.'s tattoo was some form of grooming related to the sexual misconduct, at the time Detective Judy conducted his investigation there was no indication that this could have been the case. Nor has this been claimed by any party. For that matter, while the motive for the sexual misconduct appears clear—Jewell's own sexual gratification—there is no evidence whatsoever of any particular motive for the tattooing offense.

In sum, there is no evidence that it would have been objectively foreseeable for Detective Judy, at the time he conducted the phone calls, to believe the pending tattooing offense was inextricably intertwined with the alleged sexual misconduct. His inquiry into Jewell's alleged sex crimes was a proper exercise of his responsibility to protect society by investigating potential criminal activities and did not violate Jewell's right to counsel.

Accordingly, we affirm the trial court's denial of Jewell's motion to suppress the recorded phone conversations.

### III. Jewell's Forty-Year Sentence Is Appropriate

Jewell also appeals his forty-year sentence, claiming that it was "inappropriate in light of the nature of the offense and the character of the offender." Ind. Const. art. 7, § 4; Ind. Appellate Rule 7(B). We summarily affirm the Court of Appeals' contrary conclusion. Ind. Appellate Rule 58(A).

### Conclusion

We affirm Jewell's conviction and sentence.

Dickson, Sullivan, Rucker, and David, JJ., concur.