16 April 7, 2016 No. 20

# IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JESUS R. PRIETO-RUBIO,
*Respondent on Review.*

(CC 11693CR, 112523CR;
CA A152030 (Control), A152033;
SC S062344)

On review from the Court of Appeals.*

Argued and submitted February 4, 2015.

Rebecca M. Auten, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the briefs were Ellen F. Rosenblum, Attorney General, Anna Joyce, Solicitor General.

John J. Tyner, III, Hillsboro, argued the cause and filed the brief for respondent on review.

Alexander A. Wheatley, Portland, filed the brief for *amicus curiae* Oregon Justice Resource Center and on behalf of *amici curiae* American Civil Liberties Union of Oregon, Inc. and the Oregon Criminal Defense Lawyers Association. With him on the brief was Emily E. Elison, Portland.

Before Balmer, C.J., Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

LANDAU, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Washington County Circuit Court, Thomas Kohl, Judge. 262 Or App 149, 324 P3d 543 (2014)

** Linder, J., retired on December 31, 2015, and did not participate in the decision of this case.

**LANDAU, J.**

After a defendant has been charged with a crime and the right to counsel has attached, Article I, section 11, of the Oregon Constitution prohibits the police from asking the defendant about that crime without first notifying his or her lawyer. *State v. Randant*, 341 Or 64, 71-73, 136 P3d 1113 (2006). The issue in this case is the extent to which that same constitutional provision prohibits the police from questioning a represented defendant charged with a crime about other, uncharged offenses. Defendant argues that police violate the right to counsel by questioning about other, uncharged offenses if those matters were in any way "factually related" to the crime for which he had obtained counsel. According to defendant, that is what happened in this case, and so the trial court should have suppressed certain statements that he made to police without the assistance of counsel. The state argues that defendant relies on the wrong test. In the state's view, police who question a defendant about other matters violate that defendant's right to counsel only if those other matters are part of the same "criminal episode" for which the defendant obtained counsel. According to the state, police are free to question a defendant about matters not concerning the charged crime or the events surrounding that crime, and, because that is what happened in this case, the trial court correctly denied defendant's motion to suppress. The Court of Appeals agreed with defendant. *State v. Prieto-Rubio*, 262 Or App 149, 324 P3d 543 (2014).

We conclude that the appropriate test for determining the permissible scope of questioning of a criminal defendant who is represented by counsel is whether it is objectively reasonably foreseeable that the questioning will lead to incriminating evidence concerning the offense for which the defendant has obtained counsel. In this case, the charged and uncharged offenses were so closely related that it was reasonably foreseeable that questioning defendant about the uncharged offenses would elicit incriminating evidence about the charged offense. As a result, that questioning violated defendant's state constitutional right to counsel. Accordingly, we affirm the decision of the Court of Appeals.

## I.   FACTS

The relevant facts are not in dispute. On August 8, 2011, a 12-year-old girl, A, reported that defendant, a member of her extended family, had sexually abused her the previous day. She said that defendant had touched her breasts and vaginal area while she was at his home. The following day, Detective Rookhuyzen went to defendant's home and interviewed him. Defendant admitted that he had been in the same room with A, but he said that he did not remember what had happened there. Rookhuyzen arrested defendant for his abuse of A.

At the station, Rookhuyzen interviewed defendant again. He asked defendant primarily about A. But he also asked whether any other children had come to defendant's home. Defendant mentioned another child, K, but only by first name. The state ultimately charged defendant with first-degree sexual abuse of A, alleging that the abuse occurred "on or between August 7, 2011 [and] August 8, 2011." Defendant retained counsel to defend him on that charge.

Over the next several weeks, Rookhuyzen continued to investigate. He located K, who turned out to be a niece of defendant. K reported that defendant had repeatedly touched her vaginal area. Rookhuyzen located another minor victim, L, who was another niece of defendant and who also reported that defendant once had put his hands in her pants and touched her vaginal area. Both K and L said that the incidents of abuse had occurred while they were alone with defendant at his home. They reported that the separate incidents occurred at least eight months before defendant allegedly abused A.

Rookhuyzen went to the Washington County Jail, where defendant was being held on the charges relating to A. Rookhuyzen read defendant his *Miranda* rights, and defendant waived those rights. The detective knew that defendant had retained counsel on the charges relating to A. But he did not notify defendant's lawyer about the interview, because he intended to ask defendant only about K and L. During the interview, Rookhuyzen questioned defendant about K and L, and defendant made incriminating

statements about the incidents involving those two victims. The state then charged defendant with three counts of first-degree sexual abuse, two counts involving K and one involving L. The indictment alleged that defendant had abused K "on or between August 31, 2009 and January 1, 2011." It further alleged that defendant had abused L "on or between January 1, 2010 and January 1, 2011."

The state then moved to consolidate the case involving A with the case involving K and L. The state informed the court that it was proper to consolidate the cases because the crimes alleged against defendant "involve many of the same witnesses and arise from the same investigation" and that those crimes "are of the same or similar character and show a common scheme or plan." *See generally* ORS 132.560(1)(b)(A) and (C) (grounds for consolidation). The trial court granted the state's motion.

Before trial, defendant moved to suppress the statements that he had made to Rookhuyzen regarding K and L because they had been obtained in violation of his right to counsel, guaranteed by Article I, section 11, of the Oregon Constitution. Defendant argued that Rookhuyzen knew that he already had retained counsel and yet failed to notify counsel before conducting the interview. In defendant's view, even though he had obtained counsel to defend him only on the charge related to A, under *State v. Sparklin*, 296 Or 85, 672 P2d 1182 (1983), the detective was not permitted to question him about K and L because the incidents involving those victims was factually related to the incident involving A.

At the hearing on defendant's motion, Rookhuyzen testified about his interview of defendant regarding K and L.

"The Court: How would I ultimately be able to say, Officer, that you weren't ending up talking to the defendant about things that fell with—under the case that he was already represented? How do you know you weren't doing that?

"The Witness: Well, I think it's impossible to have a conversation with him and not have some overlap. These are family members. So I mean, I think that it's fair to say, you, know, a name might have come up. But at this point,

he'd been charged on the first victim, and I was completely focused on victims two and three."

Rookhuyzen acknowledged on cross-examination that it was "fair to say" that during all of his interviews he had asked defendant about "the universe of kids who [had come] to his house" over the course of the preceding two years. But when asked about who actually was mentioned in the last interview, the detective replied that only K and L were named.

The trial court denied defendant's motion to suppress. It explained that defendant's constitutional right to counsel had attached only as to the charges involving A, and Rookhuyzen's questioning did not violate that right because the interview focused on the charges involving K and L, which involved different times and different victims:

> "And the fact that the cases appear to be related, because, of course, first of all, they're—the allegations are against [defendant]; that they're from minors; and that they involve his house is sufficiently similar to say that they are the same. And the representations of counsel is to the offense charged, which would have been the offenses charged initially [involving A], not the ones related to by the officer that were charged after that, because they involved a different time frame and different victims and result in the allegations of different crimes."

Defendant waived his right to a jury trial, and the court found him guilty of one count of sexual abuse against K and L and two counts of attempted sexual abuse of A. In rendering the verdict on the case involving K and L, the trial court referred to the incriminating statements that defendant had made to Rookhuyzen during the final interview.

On appeal, defendant argued that the trial court erred in denying his motion to suppress the statements that he had made to Rookhuyzen about K and L. He argued to the Court of Appeals as he had to the trial court, namely, that Rookhuyzen had violated his state constitutional right to counsel by interviewing him without notifying his lawyer when the detective knew that he had retained counsel.

The Court of Appeals agreed with defendant and reversed. The court began with the general proposition that, once a defendant has retained counsel to provide a defense

on a criminal charge, there can be no interrogation concerning the events related to that charge unless the defendant's lawyer is notified and afforded a reasonable opportunity to attend. 262 Or App at 155. Citing this court's decision in *Sparklin*, the court noted that the right to insist on the presence of counsel, however, is limited to the "criminal episode" that gave rise to the charge for which he obtained the assistance of an attorney. *Id*. at 156. Even so, the court commented, "'we cannot simply take at face value the Supreme Court's statement that the Article I, section 11, right is specific to the criminal episode in which the accused is charged.'" *Id*. at 159 (quoting *State v. Potter*, 245 Or App 1, 7, 260 P3d 815 (2011)). In the view of the Court of Appeals, *Sparklin* must be understood to apply more broadly. *Id*. The court observed that interpreting *Sparklin* to apply solely to the criminal episode for which the defendant was charged could permit the state to game the rule to enable it to interrogate defendants without informing their attorneys, for example, by strategically delaying filing certain charges. *Id*. To avoid such possibilities, the controlling inquiry must focus on whether the charged offense and the subject of the additional investigation are "factually related," taking into account the extent to which there is overlapping evidence and close temporal proximity, as well as whether there is close collaboration among those investigating the different incidents. *Id*. at 156-57.

Applying those principles to the case, the court concluded that the criminal episodes involving A, K, and L were factually related for the purposes of defendant's Article I, section 11, right to counsel. *Id*. at 157-59. The court said that, although the crimes involving A, on the one hand, and K and L, on the other, occurred at different times and did not involve overlapping evidence, still, the victims were all family members. *Id*. at 157-58. Moreover, the crimes occurred at the same location, were investigated by the same detective, and involved similar types of physical conduct toward the victims. *Id*. at 158-59. Even if Rookhuyzen's final interview did not actually produce additional incriminating information concerning the charges involving A, the court continued, "it is plain that that was a distinct possibility," given that the detective himself had said that it was "impossible"

for his questioning about K and L not to have some overlap with the charges involving A. *Id*. at 159.

On review, the state now argues that the Court of Appeals erroneously departed from this court's decision in *Sparklin*. In the state's view, *Sparklin* prohibits investigators from questioning a represented defendant only about the "events surrounding the charged crime," that is, the events occurring immediately before or after the charged conduct. In this case, the state argues, the crimes involving K and L did not involve facts that occurred immediately before or after the abuse of A; rather the offenses involving K and L occurred between eight months and two years earlier.

Defendant argues that the Court of Appeals correctly interpreted *Sparklin* to hold that the right to counsel under Article I, section 11, extends to questioning about events that are factually related to the charged offense. In defendant's view, an event is "factually related" to a charged offense for right-to-counsel purposes if questioning about the event could foreseeably produce information relevant to the charged offense. In this case, he argues, it was reasonably foreseeable that questioning about the abuse of K and L could produce incriminating information about the abuse of A because the abuse of all three victims involved members of defendant's extended family and occurred at the same place, that is, defendant's house.

## II.   ANALYSIS

Both parties claim support for their positions in *Sparklin*. The state quotes a reference to "criminal episodes" in the decision, while defendant quotes a different reference in the decision to whether charges are "factually related." Our task then is to clarify what is the appropriate test under *Sparklin* for determining the scope of the right to counsel under Article I, section 11. We address that task by first noting the doctrinal context for that decision, then addressing what the court did and did not say in that opinion, following with a summary of subsequent doctrinal developments, and finally turning our attention to its appropriate application in cases such as this one.

A. *Doctrinal Context*

Article I, section 11, of the Oregon Constitution provides that, "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel." As this court explained in *State v. Davis*, 350 Or 440, 464-70, 256 P3d 1075 (2011), the state constitutional guarantee—like its federal counterpart, the Sixth Amendment to the federal Constitution—was originally understood to apply only to the conduct of criminal trials. But, as the nature of law enforcement and criminal prosecution changed, both state and federal courts expanded their views of the "criminal prosecution" that triggered the right to counsel, so that the constitutional guarantee applied as early as the commencement of criminal proceedings by indictment or other formal charge. *Id*. at 470-76. The rationale for that doctrinal shift was the recognition that a defendant's "assistance" of counsel would be less than meaningful if it were limited to the trial itself. As the United States Supreme Court explained in *United States v. Ash*, 413 US 300, 310, 93 S Ct 2568, 37 L Ed 2d 619 (1973), "[t]his extension of the right to counsel to events before trial has resulted from changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself."

Although state and federal courts held that the constitutional right to counsel "attached" as of the time of charging, they also held that the scope of that pre-trial right was limited to certain "critical stages" of the criminal prosecution. In *Ash*, for example, the Supreme Court held that the Sixth Amendment entitles a defendant the assistance of counsel in pretrial confrontations "presenting the same dangers that gave birth to the right itself." *Id*. at 311. A pretrial event is considered a "critical stage" for Sixth Amendment purposes if counsel's absence from that event "could derogate from the defendant's right to a fair trial." *United States v. Wade*, 388 US 218, 226, 87 S Ct 1926, 18 L Ed 2d 11 (1967). More specifically, the right applies if "potential substantial prejudice to defendant's rights inheres in the particular confrontation" and counsel's presence would help avoid that prejudice. *Id*. at 227.

This court similarly held that, under Article I, section 11, the scope of the right to counsel encompasses stages in criminal proceedings in which counsel's presence could prevent prejudice to a defendant. In *State v. Miller*, 254 Or 244, 249, 458 P2d 1017 (1969), for example, the court concluded that the right applied to those stages of a criminal proceeding "when [a defendant] must take steps or make a choice which is likely to have a substantial effect on the prosecution against him." Thus, in *State ex rel. Russell v. Jones*, 293 Or 312, 317, 647 P2d 904 (1982), the court concluded that the defendant's right to counsel under Article I, section 11, was violated by an order barring his counsel from a presentence interview. The court focused on the potential prejudice arising from that interview:

> "At the hearing, the report of information given by the defendant is subject to disclosure and defense counsel can make objections and present evidence and additional statements by defendant. Given these procedural opportunities, rarely would there be a risk of irremediable harm from the absence of counsel at the presentence interview. Yet, circumstances are conceivable where the presence of counsel would be helpful."

*Id.* at 318.

An additional aspect of the scope of the state and federal right to counsel concerned whether the right applied only to interrogation about a charged offense, as opposed to interrogation about other matters as yet not the subject of a formal criminal charge. In *Brewer v. Williams*, 430 US 387, 97 S Ct 1232, 51 L Ed 424 (1977), the United States Supreme Court appeared to suggest that the right was not limited to the charged offense, but extended to other matters that were, in some sense, closely related to the charged offense. In that case, the defendant was charged with the abduction of a young girl, and he retained counsel on that charge. Police later transported him to another city. On the drive, police—believing that defendant had murdered the young girl during the abduction—asked defendant whether he knew where the girl's body was located and suggested that her parents deserved to give their daughter a proper Christian burial. The defendant then agreed to show the police where he had buried the body. The defendant was

later convicted of the murder, based in part on his statements to the police. On appeal, he argued that the trial court should have suppressed the statements, because they violated his Sixth Amendment right to counsel. The Supreme Court agreed. In the process, it did not differentiate between the interrogation related to the charged crime (kidnapping) and the questioning related to the uncharged conduct (murder). *Id.* at 398-99. Although the Court did not address the issue head-on, the fact that it concluded that the defendant's right to counsel had been violated by the questioning related to the murder appeared to suggest that the right extended to questioning about matters other than the charged offense.

That, at least, is the way that most state and federal courts interpreted *Brewer*, concluding that the right to counsel extended not just to the charged offense, but also to other uncharged conduct that was "closely related" to the charged offense. *See, e.g.*, *People v. Boyd*, 86 Cal App 3d 54, 62 (1978), *abrogated by Texas v. Cobb*, 532 US 168, 168, 121 S Ct 1335, 149 L Ed 2d 321 (2001); *State v. Derrico*, 181 Conn 151, 168, 434 A2d 356 (1980). At least one state court, the New York Court of Appeals, went further, adopting a "bright-line rule" that prohibited police interrogation about any matter—whether or not related to the charged offense—once the defendant retained counsel on a criminal charge. *People v. Rogers*, 48 NY2d 167, 169, 397 NE 2d 709 (1979).

B.   State v. Sparklin

It was in that context that this court decided *Sparklin*. In that case, the defendant was charged with forgery after using a credit card at a Eugene shopping center stolen from one Mansell. The defendant retained counsel on that charge. Meanwhile, police obtained information linking the defendant to an incident in Portland in which Mansell had been beaten and his credit cards stolen. They also learned that the defendant might have been involved in an unrelated murder of another man, Davidson. The police, without notifying the defendant's lawyer, gave defendant *Miranda* warnings and then questioned him about the Mansell assault and the Davidson murder. The defendant

waived his *Miranda* rights and confessed to the murder. 296 Or at 87.

The defendant ultimately was convicted of the Davidson murder, based in part on his confession. On appeal, he argued that, among other things, the trial court should have suppressed that confession because the police had obtained it in violation of his right to counsel under Article I, section 11, and the Sixth Amendment. According to the defendant, his representation by an attorney on the forgery charge insulated him from police questioning regarding any other crime. *Id.* at 94.

This court rejected the defendant's argument. Beginning with Article I, section 11, the court explained that the purpose of the guarantee is to ensure that, "once a person is charged with a crime he or she is entitled to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against [the] defendant." *Id.* at 93. To effectuate that purpose, the court explained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the state first notifies the defendant's lawyer and provides counsel a reasonable opportunity to attend. *Id.*

As for the scope of that right to counsel, the court had the following to say:

"The development of the right to an attorney at pretrial confrontations between the state and the individual reflects a concern for the preservation of the fairness of trial and counsel's effectiveness in defending against the charge. Interrogations, like line-ups, polygraph sessions and psychiatric examinations, are investigative tools by means of which the state builds its case against the accused. An attorney's presence at these encounters may serve to forestall the use of impermissibly derived evidence at trial.

"Yet the [A]rticle I, section 11, guarantee of an attorney, like the federal counterpart, remains focused on the trial; that is, it is the protection of rights to which a defendant is entitled in the trial itself which the guarantee is intended

to preserve. In *State v. Newton*, 219 Or 788, 802-03, 636 P2d 393 (1981), the plurality opinion observed, in the language of the federal analysis:

> "'The right to counsel attaches to certain evidence-gathering processes which are deemed 'critical stages' of the prosecution as an extension of a defendant's right to representation by counsel in court. Any pre-trial adversarial contact of the state and a defendant at which some benefit of counsel would be lost if counsel is not present, that is, at which the state's case may be enhanced or the defense impaired due to the absence of counsel, may be considered a critical stage of the prosecution at which defendant has a right to the presence of counsel'

> "It is the fairness of the 'criminal prosecution' which counsel's presence helps to ensure. For this reason the [A]rticle I, section 11 right to an attorney is specific to the criminal episode in which the accused is charged. The prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes."

*Id.* at 94-95 (footnotes omitted).

Turning to the Sixth Amendment right to counsel, the court noted that, at that time, it appeared to be "of equal scope" with the right under Article I, section 11. *Id.* at 95. The court noted that the United States Supreme Court had not yet directly addressed the issue, though it had implicitly done so in *Brewer*. The court observed that, with the exception of New York, most other courts concluded that the right to counsel prohibits interrogation about uncharged conduct that is closely related to the charged offense. *Sparklin*, 296 Or at 95-98.

Applying that test to the facts of the case, the court concluded that the Davidson case was "unrelated" to the charged offense for which the defendant had retained counsel, and so the questioning about the Davidson murder was not improper. *Id.* at 98. Interestingly, in *dictum*, the court added that the questioning about the Mansell assault was improper, "[b]ecause [the] defendant was represented by an attorney for the crimes against *** Mansell." *Id.*

C.  *Later Doctrinal Developments*

Meanwhile, in the years following *Sparklin*, most lower federal courts continued to follow the rule that the right to counsel prohibits police interrogation concerning matters that are "closely related" to, or "inextricably intertwined" with the charged offense. *See, e.g.*, *U.S. v. Doherty*, 126 F3d 769 (6th Cir 1997), *abrogated by Cobb*, 532 US at 168 n 1 (acknowledging that tribal charge for sexual abuse and federal charge for engaging in sexual abuse with a child were inextricably intertwined because the same underlying conduct formed the basis for both offenses); *U.S. v. Arnold*, 106 F3d 37, 42 (3rd Cir 1997), *abrogated by Cobb*, 532 US at 168 n 1 (holding that a witness intimidation charge and the attempted murder of the same witness were inextricably intertwined for Sixth Amendment purposes because each involved the same factual predicate and central purpose); *U.S. v. Kidd*, 12 F3d 30, 32 (4th Cir 1993) (concluding that two drug transactions taking place on different days were not inextricably intertwined even though they involved the same type of offense because each was factually distinct from and independent of the other); *U.S. v. Carpenter*, 963 F2d 736, 740-41 (5th Cir 1992) (holding that burglary and possession of firearm by a felon were not inextricably intertwined when firearm was discovered during the defendant's arrest for the burglary because the events leading up to the firearm charge were distinct form those constituting the burglary).

The Ninth Circuit adopted a slightly broader test, holding that, to determine whether an event is inextricably intertwined with the charged crime, courts must examine "all of the facts and circumstances relating to the conduct involved, including the identity of the persons involved, *** and the timing, motive, and location of the crimes. No single factor is ordinarily dispositive." *U.S. v. Covarrubias*, 179 F3d 1219, 1225 (9th Cir 1999), *abrogated by Cobb*, 532 US at 168 n 1.

Most state courts followed suit, almost all of them relying on the Sixth Amendment and not independently interpreting their state constitutional right-to-counsel guarantee. *See, e.g.*, *Taylor v. State*, 726 So 2d 841, 845 (Fla

Ct App 1999) (police questioning violated right to counsel because "the facts of the charged and uncharged offense are inextricably intertwined"); *People v. Clankie*, 124 Ill 2d 456, 462-63, 530 NE2d 448 (1988) ("[S]ome technically distinct, formally charged offenses are actually so closely related to certain offenses for which formal charges have not been made that the right to counsel for the charged offense cannot constitutionally be isolated from the right to counsel for the uncharged offense."); *Commonwealth v. Rainwater*, 425 Mass 540, 547-48, 681 NE2d 1218 (1997), *abrogated by Cobb*, 532 US at 168 n 1 (questioning about uncharged conduct did not violate right to counsel because the facts "were not inextricably intertwined with" the charged conduct); *In re Pack*, 420 Pa Super 347, 355, 616 A2d 1006 (1992), *abrogated by Cobb*, 532 US at 168 n 1 (once the right to counsel attaches, defendant may be questioned about "unrelated offenses").

In *Cobb*, the United States Supreme Court significantly altered the legal landscape in holding that the Sixth Amendment right to counsel is categorically offense-specific, unqualified by any exception that applies to uncharged offenses that are closely related to, or inextricably intertwined with, a charged offense. In that case, the defendant was charged with burglary of a neighbor's home and obtained appointed counsel on that charge. Police later developed reason to suspect that the defendant also was involved in the murder of the neighbor's wife and daughter, who had been reported missing shortly after the burglary. The defendant was arrested for those murders and given *Miranda* warnings. He waived his *Miranda* rights and confessed to the murders. *Id.* at 165-66.

The defendant ultimately was convicted of the murders. On appeal, he argued that the trial court erred in denying a motion to suppress the evidence of his confession on the ground that it had been obtained in violation of his Sixth Amendment right to counsel. The Texas Court of Appeals agreed, concluding that the right to counsel in the burglary cases precluded questioning about the murder because the two offenses were "inextricably intertwined." *Id.* at 166-67.

The United States Supreme Court reversed, holding that, when the Sixth Amendment right to counsel attaches,

it does so only with respect to the specific charged offense. *Id.* at 172.[1] The Constitution, the court held, "does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." *Id.* at 171-72. The Court acknowledged that a number of lower federal courts and state courts had adopted a rule, based on *Brewer*, foreclosing interrogation of a represented defendant on matters that were factually related to the charged offense. *Cobb*, 532 US at 168. It nevertheless held that those courts had read too much into *Brewer*, which the Court said simply had not directly addressed the issue. *Cobb*, 532 US at 168-69.

Justice Breyer, writing for four justices, dissented. Among other things, he suggested that the majority's narrow, offense-specific test is likely to encourage strategic manipulation of charging by prosecutors as a way to circumvent a defendant's constitutional right to counsel. *Id.* at 182-83 (Breyer, J., dissenting). "The majority's rule," he complained, "permits law enforcement officials to question those charged with a crime without first approaching counsel, through the simple device of asking questions about any other related crime not actually charged in the indictment." *Id.*[2]

In response, most state courts—those that have adopted federal Sixth Amendment analysis—have adjusted

---

[1] The Court held that the test for determining what is the same or a separate "offense" is the test already used in determining the same or separate offenses for double-jeopardy purposes, under *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932). *Cobb*, 532 US at 173. That test involves a comparison of statutory elements; offenses are said to be "separate" when the statute defining the elements of one offense requires proof of a fact that the other does not. *Id.*

[2] The majority's opinion in *Cobb* has generated a good deal of criticism on precisely that ground. *See, e.g.*, Andrew Hanawalt, *Investigation of Represented Defendants After* Texas v. Cobb, 81 Tex L Rev 895, 896 (2003) ("Because prosecutors have almost absolute discretion in their charging decisions, *Cobb* invites *** strategic misbehavior."); David J. D'Addio, *Dual Sovereignty and the Sixth Amendment Right to Counsel*, 113 Yale LJ 1991, 1996 (2004) (*Cobb* permits federal, state, and tribal governments to "deliberately elicit incriminating statements from the accused without the knowledge or presence of an attorney"); Michael J. Howe, *Tomorrow's Massiah: Towards a "Prosecution Specific" Understanding of the Sixth Amendment Right to Counsel*, 104 Col L Rev 134, 149-50 (2004) ("Given the abundance of overlapping and related statutory offenses, a single criminal transaction can be characterized—and prosecuted—as a number of offenses, all just different enough from one another to satisfy the *Blockburger* test.").

their case law accordingly, abandoning their precedents that had extended the right to counsel to include uncharged offenses that were closely related to, or inextricably intertwined with, the charged offense. *See, e.g.*, *People v. Slayton*, 26 Cal 4th 1076, 32 P3d 1073 (2001); *State v. Schneider*, 347 Mont 215, 197 P3d 1020 (2008); *Alston v. Commonwealth*, 264 Va 433, 570 SE2d 801 (2002).

A notable exception is the Indiana Supreme Court. In *Jewell v. State*, 957 NE2d 625 (2011), the court adhered to a version of the inextricably intertwined test as a matter of independent interpretation of its state constitutional guarantee of the right to counsel. In *Jewell*, the defendant was arrested and charged with tattooing a minor, a misdemeanor, and he retained counsel to defend against that charge. Meanwhile, police learned that the defendant may have sexually abused the same minor. They arranged to have the minor make recorded phone calls to the defendant, and during those calls, defendant made incriminating statements about the sexual abuse. The state charged the defendant with sexual abuse of the minor, and he was ultimately convicted of those charges. *Id.* at 627-28.

On appeal, the defendant argued that the trial court erred in denying his motion to suppress the incriminating statements that had been recorded, arguing that the statements had been obtained in violation of his right to counsel, guaranteed by Article I, section 13, of the Indiana Constitution. The court noted that, in response to *Cobb*, most state courts had retreated from prior holdings that the constitutional right to counsel prohibited questioning about matters closely related to, or inextricably intertwined with, charged offenses. *Id.* at 632-33.[3] Nevertheless, the court held, the right to counsel protections afforded by its state constitution "are sometimes broader than those flowing from the Sixth Amendment." *Id.* at 633. The court acknowledged the state's interest in investigating criminal activities, as emphasized by the Supreme Court in *Cobb*. *Id.* at 634-35. But it insisted that the state's interest does not eliminate "the defendant's

---

[3] Interestingly, the court observed that this court, in *Sparklin*, "appears to recognize some version of the 'inextricably intertwined' exception under its constitution," which includes a right to counsel provision identical to Indiana's. *Jewell*, 957 NE2d at 633.

right to aid of counsel before facing the full power of the prosecutorial state." *Id.* at 635. The court concluded:

> "The 'inextricably intertwined' exception to the general rule that [Article I,] Section 13's right to counsel protection is offense specific applies when it was objectively foreseeable that the pending offense, for which the right to counsel has already attached, was so inextricably intertwined with the offense under investigation that the right to counsel for the pending offense could not be constitutionally isolated from the right to counsel for the offense under investigation. The inquiry focuses on the nature of the conduct involved rather than on the elements of the offenses. A reviewing court must examine and compare all the facts and circumstances—as known at the time of the investigation—related to the conduct, including the nature of the conduct, the identity of thepersons involved (including the victim, if any), and the timing, motive, and location of the crimes."

*Id.* Applying that test to the facts at hand, the court concluded that the circumstances of the charged offense of unlawful tattooing of a minor, were not so linked to the uncharged sexual abuse offenses that it was objectively foreseeable to the police that the charged misdemeanor was intertwined with the uncharged crimes. *Id.* at 636.

D.   *The Correct Rule and Its Application*

With the foregoing in mind, we return to *Sparklin* and its application to this case. *Sparklin* is not a model of clarity. At one point in the opinion, the court suggested that the test under both state and federal constitutions is offense-specific. 296 Or at 95. At another point, however, the court referred to whether questioning is about "factually unrelated" conduct. *Id.* And, in *dictum*, the court suggested that the police questioning about the Mansell assault was improper, even though that questioning concerned an entirely different offense from the charged offense. *Id.* at 98. Not surprisingly, the state seizes on one reference and urges us to interpret the decision to impose a very narrow, offense-specific test that is not quite the statutory-elements test that the United States Supreme Court adopted in *Cobb*, but is close to it. And, equally unsurprisingly, defendant seizes on the reference to whether charged and uncharged offenses

are "factually related" and argues for a much broader interpretation of the decision.[4]

We conclude that neither party's contentions are exactly on the mark. Beginning with the state's argument, it is true that, as we have just noted, *Sparklin* stated that the right to counsel is "specific to the criminal episode in which the accused is charged." 296 Or at 95. But that, by itself does not suggest what is meant by the term "criminal episode." And the term is employed in a variety of different contexts in a variety of different ways. As then-Chief Judge Brewer observed in *Potter*, 245 Or App at 6, "'[c]riminal episode' is a term that, at this point in time, has been used in so many diverse statutory and constitutional contexts within the criminal law that its precise meaning in any given context, much less its origins, is not always clear."

Certainly, there is a temptation to follow the lead of the United States Supreme Court in *Cobb* and borrow the definition that applies for double jeopardy purposes. *See*

---

[4] *Amici Curiae* Oregon Justice Resource Center, American Civil Liberties Union Foundation of Oregon, and Oregon Criminal Defense Lawyers Association urge us to abandon *Sparklin* and adopt in its stead a "bright-line" rule that would prohibit police from communicating at all with a represented person—and preclude a represented person from waiving the right to counsel—without counsel being present, regardless of whether the questioning would pertain to matters factually unrelated to the charged conduct. *Amici* model their proposed rule on one that the New York Court of Appeals adopted in *People v. Rogers*, 48 NY2d 167, 397 NE2d 709 (1979). According to *amici*, this court "has not yet had the opportunity to adopt" the New York rule, but should do so in this case.

We decline the invitation to adopt the New York rule. To begin with, *amici* are incorrect in asserting that this court has not previously had the opportunity to adopt the rule. The rule was explicitly identified, considered, and rejected in *Sparklin*. 296 Or at 90-91, 95 ("The prohibition placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes."). Aside from that, the New York Court of Appeals has more recently qualified its bright-line rule, indeed, to such an extent that its own members have recently complained that the rule now "is so complicated that it is almost incomprehensible" and that it "regularly produces unjust results." *People v. Lopez*, 16 NY3d 375, 388, 947 NE2d 1155 (2011) (Smith, J., concurring); *see generally* Pamela S. Karlan, *Discrete and Relational Criminal Representation: The Changing Vision of the Right to Counsel*, 105 Harv L Rev 670, 679 (1992) ("[T]he New York Court of Appeals recently rejected the existing state right-to-counsel rule that the police could not subject a suspect represented on pending charges to interrogation concerning new, unrelated charges. The court saw an offender-specific, as opposed to an offense-specific, rule as excessively costly *** [and one that] perversely gave more protection to the 'common criminal' already facing charges than to a 'first-time arrestee.'")

ORS 131.505(4) (defining "criminal episode" for double jeopardy purposes as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstance that such conduct is directed to the accomplishment of a single criminal objective"). The state's reading of *Sparklin* comes quite close to that, although it does not cite the statute itself. According to the state, the term should be limited to the facts immediately preceding or immediately succeeding the events that form the basis for the charge.

Nothing in *Sparklin*, however, suggests that the court intended to adopt such a narrow definition of the term. Indeed, the state's definition of "criminal episode" is hard to square with the balance of the court's opinion in that case, especially its suggestion that the police had violated the defendant's right to counsel by interrogating him about the Mansell assault that had occurred in Portland while he was represented on the forgery charge, which had been based on his attempt to use Mansell's credit card some time later, in Eugene. Moreover, giving the phrase "criminal episode" too narrow a definition risks the sort of strategic charging behavior that the Court of Appeals fairly identified in its opinion in this case, echoing the criticism of the United States Supreme Court's decision in *Cobb*.

Defendant's emphasis on whether the charged and uncharged offenses are simply "factually related" is likewise untenable. To begin with, the court in *Sparklin* did not use that phrase or apply that test. Rather, it said that the right to counsel does not limit police questioning about "factually unrelated" criminal episodes. It is not quite logical to deduce that, while questioning about factually *un*related criminal episodes is permissible, questioning about factually related criminal episodes is not. Aside from that, the phrase, without more, is too amorphous to be of any value. Virtually any conduct involving the same defendant can be said to be "factually related" at some level of abstraction and yet not really implicate the concerns that underlie the state constitutional guarantee of the right to counsel.

The answer to the conundrum may be found in recalling precisely those underlying concerns. The court's

opinion in *Sparklin* suggests something narrower than just that there be some factual relation between charged and uncharged offenses; rather, the charged and uncharged offenses must be related in such a way that questioning about the latter is likely to compromise the right to counsel as to the former. As the court in *Sparklin* explained, the purpose of the Article I, section 11, right is to ensure that a defendant charged with a crime has the benefit of an attorney's presence, advice, and expertise "in any situation where the state *may* glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant." 296 Or at 93 (emphasis added). Just because police ask questions carefully avoiding the facts immediately surrounding the criminal episode of the charged offense does not necessarily mean that those questions will not elicit information that is incriminating about that charged offense. It would seems to follow from *Sparklin* that, to the extent that questioning about uncharged offenses may foreseeably lead to such incriminating information about the charged offense, it is foreclosed by the state constitutional right to counsel. Otherwise, the state constitutional guarantee of the right to counsel would be circumvented.

In that regard, *Sparklin* recalls the Indiana Supreme Court's decision in *Jewell*, which was based on the Indiana Constitution's identical right-to-counsel guarantee. The court there concluded that whether it is objectively foreseeable that questioning about uncharged conduct will implicate a charged offense for which counsel has been retained will depend on the facts and circumstances known at the time of the investigation, concerning "the nature of the conduct, the identity of the persons involved, *** and the timing, motive, and location of the crimes." *Jewell*, 957 NE2d at 935. Those factors likewise are consistent with those that the Court of Appeals mentioned in this case, including temporal proximity, location, nature of defendant's conduct, and the nature of the investigation process itself and whether it involves the same or separate personnel. *Prieto-Rubio*, 262 Or at 157-59. We agree that whether charged and uncharged offenses are sufficiently related as to implicate the state constitutional right to counsel will depend on the facts and circumstances of each case and whether they establish that it is reasonably

foreseeable to a person in the position of the questioner that questioning will elicit incriminating information involving the charged offense for which the defendant has obtained counsel. That is an objective test that does not turn on the subjective impression of the questioner.

Turning to the facts of this case, there is no dispute that, when the state charged defendant in the case involving A, his Article I, section 11, right to counsel attached and that the right applied to the particular stage of the proceedings at which Rookhuyzen questioned him. The question then is whether defendant's Article I, section 11, right in the case involving A foreclosed questioning about his alleged abuse of K and L. The test, as we have just concluded, is whether it was reasonably foreseeable to a person in Rookhuyzen's position, that questioning about K and L would elicit incriminating information about the charged abuse of A, for which defendant had retained counsel. We conclude that it was foreseeable that the detective's questioning would have that effect.

The investigations of A, K, and L were interrelated from the beginning, as Rookhuyzen acknowledged. All of the crimes were committed at the same place—defendant's home. All of the offenses involved similar types of physical conduct, and all involved similar victims—children who were members of defendant's family. The state itself invoked those very similarities in arguing to consolidate the cases because the crimes alleged against defendant "are of the same or similar character and show a common scheme or plan." Rookhuyzen handled the investigation as to all three of the victims. Indeed, the state alleged in its motion to consolidate that the crimes alleged against defendant "involve many of the same witnesses and arise from the same investigation." Moreover, Rookhuyzen explained that, although his later questioning of defendant focused on K and L—and not A—his questioning covered the "universe" of potential victims and that it was "impossible" to have a conversation with defendant "and not have some overlap" between the charged and uncharged offenses, demonstrating that a reasonable person in Rookhuyzen's position would have foreseen the effect that the questioning would have.

To be sure, the offenses occurred at substantially different times, and, at least in some cases, that might weigh against concluding that the offenses are sufficiently factually related. But in this case, the difference in times does not alter what Rookhuyzen candidly acknowledged—that it was highly likely that his questioning would have some overlap with the charged offense.

The remedy for a violation of Article I, section 11, is the exclusion of any prejudicial evidence obtained as a result of that violation. *State v. Dinsmore*, 342 Or 1, 10, 147 P3d 1146 (2006). In this case, defendant contends that the evidence that the state obtained in violation of his right to counsel was prejudicial, and the state does not contend otherwise.[5] In fact, as we have noted, the trial court expressly referred to the incriminating statements that defendant had made to Rookhuyzen. We therefore conclude that the Court of Appeals correctly determined that Rookhuyzen's questioning in this case violated defendant's Article I, section 11, right to counsel and that the trial court erred in denying his motion to suppress.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] It could be argued that a violation of defendant's Article I, section 11, right to counsel in the case involving the abuse of A would justify the exclusion of evidence only as to that case, not as to the case involving the abuse of K and L, for which defendant had not yet retained counsel. The state, however, advanced no such argument in this case, and we express no opinion one way or the other about it.