No. 666 July 30, 2025 173

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SETH LEE ADAMS,
*Defendant-Appellant.*

Deschutes County Circuit Court
23CN00431; A180671

Walter Randolph Miller, Jr., Judge.

Argued and submitted September 27, 2024.

Daniel C. Silberman, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

ORTEGA, P. J.

Reversed.

_____
   * Lagesen, Chief Judge, *vice* Mooney, Senior Judge.

**ORTEGA, P. J.**

Defendant appeals from a judgment finding him in contempt of court four separate times for two statements and two unidentified "gestures," and summarily ordering him to spend 10 days in jail for each violation for a total of 40 days. In his first two assignments of error, defendant argues that the court violated his Article I, section 11, right to counsel under the Oregon Constitution and that, because the two statements for which he was found in contempt derived from that violation, those contempt findings should be reversed. In his third assignment, defendant asserts that the record on appeal does not support the court's findings of contempt as to the gestures because the court did not identify what the gestures were, and the record otherwise cannot support the conclusion that they constituted misconduct that "interfere[d] with a court proceeding or with the administration of justice, or that impair[ed] the respect due the court." ORS 33.015(2)(a). We conclude that the statements were derived from a violation of defendant's right to counsel and that the record lacks legally sufficient support for the other contempt findings and, accordingly, we reverse.

## I.  FACTS

The contempt judgment arose from an exchange during the underlying criminal proceeding, in which the court held an arraignment hearing as to three misdemeanor charges against defendant and on the state's motion to revoke defendant's probation. As the hearing began, defendant, who was then in custody, indicated that he would like to address the court, but the court stopped him, told him the court was going to arraign him, and asserted that he had waived his right to an attorney:

> "I know that you refuse to do your application today, and so you don't get a court appointed attorney and I'm about to go through that document with you, and then *** we can talk to the State about their recommendations on release. And then I planned on turning to you to see if you have anything you wanted to say about release."

Defendant twice began to speak, as did an unidentified speaker in the courtroom, but the court stopped him and the

speaker and proceeded to make findings about defendant's conduct:

> "THE COURT:   Just a minute. You wouldn't go to the interview room and you wouldn't complete—
>
> "THE DEFENDANT:   No contest.
>
> "THE COURT:   —any—just a minute. Just everybody hold on. [Defendant] refused to go to the interview room and refused to complete any paperwork. And so in essence, we can't tell if [he] would qualify for court appointed attorney because he won't fill out the application.
>
> "If you choose to fill one out, then we can find out if you qualify, but you refused to do that. So I'm going to move forward based on your choices."

The court proceeded to explain to defendant the disadvantages of self-representation. The court asked, "Have you been threatened or [did] anybody make any promises to you to get you to waive your right to have an attorney?" to which defendant said, "[n]o, Your Honor." The court then found that defendant had waived his right to counsel, without any testimony or any statement from defendant to that effect beyond the court's conclusion based on what it termed defendant's choices.

The court then continued with the arraignment by reading the charging instrument and having defendant confirm his name and birthdate. After the state gave its release recommendation that included restricting defendant from visiting a particular address, defendant attempted to advocate for his release:

> "THE COURT:   Okay. You get one argument. Make it.
>
> "THE DEFENDANT:   Your Honor, that's the DHS building. I don't understand why I'm not allowed to go there, and my objection is—I would really like to be heard on it. So I'm trying to get help on my own, Your Honor, and it's hard for me to get help if I cannot go there or be bailed out to get the help.
>
> "* * * * *
>
> "THE COURT:   You're obviously not listening to me when I tell you that you probably shouldn't talk about your case because now you're * * * talking about one of them at least."

Defendant responded to the court by asking to plead guilty "to not waste the Court's time any longer." The court denied his request because defendant did not have the requisite paperwork to plead at that time. The court began discussing dates for the next hearing and, at that time, defendant requested that a specific attorney represent him at that hearing. The court responded, "No, you're not getting anybody because you * * * didn't fill out the paperwork, so we're done with that." Defendant told the court that he did fill out the paperwork and had it with him.

An unidentified speaker attempted to communicate with defendant, but the court would not allow it. The following colloquy ensued:

"UNIDENTIFIED SPEAKER:   It—it is related to something I need to tell him, honestly.

"THE COURT:   You don't need to tell him anything.

"UNIDENTIFIED SPEAKER:   I do, actually, because he's pro se now, and so I need to let him know something about a timeline.

"THE COURT:   We're—just a minute.

"UNIDENTIFIED SPEAKER:   Sure.

"THE COURT:   No, you don't.

"UNIDENTIFIED SPEAKER:   I do.

"THE COURT:   Not on this record for arraignment.

"UNIDENTIFIED SPEAKER:   I think I do, actually, Your Honor.

"THE COURT:   Yeah. Well, you can write it to him. He's going to come in on Monday on entry of plea and status. Thank you. That's it.

"THE DEFENDANT:   I think you just fucked up, Your Honor."

The court then found that defendant was in contempt of court for his language use and summarily imposed a sanction of 10 days in jail, and defendant responded, "Thank you, Your Honor," and asked to show "my paperwork that I have filled out and ready for my attorney, sir."

The court said that if defendant said another word, he would get another 10-day jail sanction. The court then asked, "Deputy, is he doing what I think he's doing?" An unidentified voice said, "yes," and the court imposed 10 more days in jail and asked defendant if he wanted to "do it again." Defendant responded, "Thank you, sir. I would like to." The court imposed another 10-day jail sanction, and defendant responded, "I didn't." The court told defendant, "Then don't say another word and don't do any more gestures. Just sit back and that'll be the end of it. He's in contempt three times."

After setting a date for the next hearing, the court offered the following explanation, and defendant made a final statement advocating for his release:

> "THE COURT:      *** I want the minute order to reflect court held him in contempt three times. The first [of] three was for cussing at the Court, the second and third reasons have to do with his gestures that the deputy confirmed with opportunities given to him to stop doing it, he continued to do it, that's how he got the three.
>
> "*****
>
> "THE DEFENDANT: Thank you, Your Honor. All I wanted to do when I got out the other day was step into rehab."

The court found defendant in contempt for a fourth time for that statement because the court had told defendant previously that he could not speak, though the court required that he represent himself during the arraignment.

## II.   ANALYSIS

We begin by addressing defendant's assertion, in his first two assignments of error, that his Article I, section 11, right to counsel was violated and that the appropriate remedy for that violation is to reverse the two contempt findings based on his statements because those statements derived from the court's violation of his constitutional right. As we will explain, we conclude that the pretrial proceeding at issue qualified as a critical stage in the proceedings such that defendant was entitled to counsel, that defendant did not explicitly or impliedly waive his right to counsel,

and thus, that his Article I, section 11, right to counsel was violated. We also agree that the appropriate remedy is to reverse the contempt findings for conduct that was derived from the violation of defendant's constitutional right.

Article I, section 11, provides that "[i]n all criminal prosecutions, the accused shall have the right to *** be heard by himself and counsel." Defendants have a right to counsel at all "critical stages" of the prosecution. *State v. Prieto-Rubio*, 359 Or 16, 24, 376 P3d 255 (2016). A critical stage occurs when a defendant "must take steps or make a choice which is likely to have a substantial effect on the prosecution against him." *State v. Miller*, 254 Or 244, 249, 458 P2d 1017 (1969). The determination of whether a proceeding is a critical stage is "case-specific and circumstance-specific." *State v. Pedersen*, 338 Or App 362, 371, 566 P3d 24 (2025).

For a defendant to waive his right to counsel, the "court must determine—and the record must reflect—that the waiver is both intentionally and knowingly made." *State v. Stanton*, 369 Or 707, 715, 511 P3d 1 (2022). Further, "'a valid waiver will not be presumed from a silent record.'" *Id.* at 716 (quoting *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992)). A defendant may waive the right to counsel expressly through words or impliedly through conduct, only after receiving an advanced warning that such conduct will result in the implied waiver. *Id.*

The circumstances during the hearing lead us to conclude that the arraignment in this case was a critical stage of the criminal proceedings. First, the court never explicitly informed defendant of his right to counsel nor asked him if he desired counsel as is required by ORS 135.040.[1] Instead, the court took what it described as defendant's refusal to fill out the application for a court-appointed attorney prior to the arraignment (which was not affirmed by defendant and, indeed, later was contradicted by defendant) as a voluntary waiver of counsel, stated that the court would "move forward based on your choices" (meaning that defendant

---

[1] ORS 135.040 provides, "If the defendant appears for arraignment without counsel, the defendant shall be informed by the court that it is the right of the defendant to have counsel before being arraigned and shall be asked if the defendant desires the aid of counsel."

would proceed without counsel), and insisted on that view in denying defendant's later request for an attorney. After asserting its view that defendant had waived counsel, the court instructed him to declare his name and birthdate for the record. Then defendant, who was in custody, attempted to make an argument against the prosecutor's recommendation that included some of the facts of the case. The court cut off his argument, saying, "You're obviously not listening to me when I tell you that you probably shouldn't talk about your cases." Lastly, defendant tried to plead guilty to "not waste the Court's time any longer," but the court declined to take a plea because defendant lacked the correct paperwork.

The circumstances of this case are distinguishable from those in *Pedersen*, where we held that a pretrial hearing was not a critical stage of the proceedings. At the hearing in that case, the defendant "spelled his last name and stated his date of birth, the court read the charges, and the court gave [the] defendant the name and phone number of the attorney being appointed to represent him and told him his next hearing date." *Pedersen*, 338 Or App at 364. Here, by contrast, the court concluded that defendant had waived counsel based solely on its own description of conduct outside the courtroom and declined to follow up on defendant's assertion that he had completed the required paperwork and his request for counsel, defendant was forced to advocate for his own release and did so in a way that might have impacted the prosecution's case against him, and defendant expressed a desire to plead guilty. All of those events were likely to affect the outcome of his case, making the hearing a critical stage of the proceedings. *See Prieto-Rubio*, 359 Or at 25 ("[T]he scope of the right to counsel encompasses stages in criminal proceedings in which counsel's presence could prevent prejudice to a defendant."). Thus, defendant had a right to counsel at the arraignment under Article I, section 11.

Moreover, the record here does not support a finding that defendant had waived his right to counsel, either expressly or impliedly through his conduct. *Stanton*, 269 Or at 716. Defendant's answers to the court's questions regarding his understanding of the risks of self-representation and whether he had been threatened or coerced into representing

himself following the court's conclusion that he had done so, particularly in the absence of a legally sufficient basis for that conclusion, did not constitute a waiver of his right to counsel. To the extent that the court relied on what it described as defendant's refusal to go to the interview room to fill out the application for court-appointed counsel, that did not constitute a legally sufficient basis to imply a waiver. Refusing to fill out paperwork without more—and which defendant later asserted he had already completed—did not convey an intention to proceed without counsel under these circumstances. *See State v. Guerrero*, 277 Or App 837, 846, 373 P3d 1127 (2016) (holding that a waiver of the right to counsel can be implied through a defendant's conduct if the conduct conveyed the defendant's intention to proceed in court without counsel). Moreover, if defendant did not qualify for court-appointed counsel, he had the right to seek retained counsel to assist him at arraignment, a possibility that the trial court does not appear to have considered when treating defendant's reported failure to complete the paperwork as a basis for concluding that he was choosing to proceed without counsel. *See State v. Cotter*, 373 Or 381, 387-88, 567 P3d 1034 (2025) (concluding that a defendant had not validly waived the right to counsel under similar circumstances). The court therefore violated defendant's constitutional right to counsel by proceeding to conduct the arraignment without counsel or a valid waiver.

Next, we consider what remedy is available and appropriate on appeal from a contempt judgment following such a violation. The state argues that because a defendant is not entitled to counsel for a summary contempt proceeding, reversal of the summary contempt judgment is inappropriate. *See Pearson v. Pearson*, 136 Or App 20, 24-25, 900 P2d 533 (1995) (holding that "there is no right to counsel in a summary contempt proceeding" under ORS 33.096). That position misframes the issue; defendant here argues that the statements for which he was sanctioned derived from the violation of his Article I, section 11, right to counsel in the underlying criminal proceeding, and thus, cannot lawfully form the basis of contempt sanctions against him. That was neither offered nor addressed in *Pearson*, so we address it here.

When a defendant's Article I, section 11, right to counsel is violated, the remedy must "vindicate the individual's personal rights" and be sufficient to restore the defendant to a position "as if the state's officers had remained within the limits of their authority." *State v. Craigen*, 370 Or 696, 711, 524 P3d 85 (2023); *see id*. (holding that violation of the defendant's Article I, section 11, right to counsel during an interview required suppression of his statements); *see also Prieto-Rubio*, 359 Or at 38 ("The remedy for a violation of Article I, section 11, is the exclusion of any prejudicial evidence obtained as a result of that violation."); *State v. Garrett*, 336 Or App 506, 508, 561 P3d 98 (2024) (holding that the exclusionary rule applies when a defendant establishes a minimum factual nexus between a violation of his Article I, section 11, rights and statements made by the defendant). An exception to the exclusion of related statements occurs when the statements are attenuated from the constitutional violation. *See, e.g.*, *State v. Suppah*, 358 Or 565, 579, 369 P3d 1108 (2016) (holding that a defendant's commission of a new crime during an ongoing unlawful seizure attenuated that evidence from the constitutional violation such that suppression was not warranted). Here, the state does not argue that defendant's statements were attenuated from the violation of defendant's constitutional right, and we conclude that the statements were a direct result of the constitutional violation. Thus, "[w]e see no reason why that general framework for remedying an Article I, section 11, violation should not apply here," *Garrett*, 336 Or App at 512, such that defendant's statements that derived from the violation of his constitutional right cannot be held against him, including ones that might qualify as being in contempt of court.

We do not foreclose the possibility that a defendant may be found in contempt of court for misconduct even when their constitutional rights are violated. However, when the contemptuous statements made to the court are derived from the violation of defendant's constitutional right, the appropriate remedy is reversal. Here, defendant's first statement unartfully conveyed to the court that he believed it was making a mistake in denying him an attorney, which amounted to an objection to the court's legal ruling that defendant had

waived his right to counsel and its ensuing refusal to then let him speak for himself. Defendant's second statement advocated for his release conditions in an arraignment proceeding after which the court's erroneous legal ruling forced him to represent himself but declined to allow him to speak. Both of the statements that were the basis for the court's contempt findings derived from its violation of his Article I, section 11, right to counsel. Consequently, those contempt findings must be reversed to remedy that violation.

We proceed to address defendant's third assignment of error, in which he asserts that the record on appeal is insufficient to support the trial court's two contempt findings as to gestures. Both parties agree that defendant had no practical ability to object to the court's contempt findings, so preservation was not required. *See Peeples v. Lampert*, 345 Or 209, 220-21, 191 P3d 637 (2008) ("In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue," or when "preservation would have been futile, because the trial court would not have permitted an issue to be raised or the record to be developed.").

ORS 33.096 permits the court to "summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court." Relevant to this appeal, contempt of court means willful "[m]isconduct in the presence of the court that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court." ORS 33.015(2)(a). We review a contempt proceeding for "any evidence to support the trial court's findings." *Rodrigues and Gerhards*, 303 Or App 770, 772, 466 P3d 1016 (2020).

The court based two of its four contempt findings on unidentified "gestures" that the court asked the deputy to confirm. In its explanation for finding defendant in contempt, the court stated that the second and third contempt findings "have to do with his gestures that the deputy confirmed with opportunities given to him to stop doing it." Without any description of the gestures defendant made, we cannot conclude on this record that they constitute "misconduct" under ORS 33.015(2)(a) that would warrant

a contempt finding. We reject the state's assertion that the deputy's confirmation of the gesture permits a reasonable inference that defendant flipped off the court, a gesture that is recognized as disrespectful in a courtroom. *See State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) ("Reasonable inferences are permissible; speculation and guesswork are not."). The state relies on impermissible speculation without anything more in the record to support its claim. Moreover, given the heated nature of the exchange between the court and defendant, it would be just as easy—and just as speculative—to conclude that defendant made an innocuous gesture that the court impermissibly found to be contemptuous. Thus, without more detail about the "gestures," this record does not contain sufficient evidence to reasonably infer that the gestures made were contemptuous in nature.[2]

Reversed.

---

[2] Although a court has the power to sanction conduct that "impairs the respect due the court," we acknowledge that circumstances where the court is treating the actor with disrespect may well caution restraint in the exercise of such power.